742 F.2d 45
 39 Fed.R.Serv.2d 958, 16 Fed. R. Evid. Serv. 487
 SHU-TAO LIN, as Administrator of the Goods, Chattels and
Credits which were of Shu-Ren Lin, M.D., Deceased,
Plaintiff-Appellee,
v.
McDONNELL DOUGLAS CORPORATION and American Airlines, Inc.,
Defendants- Appellants.
 No. 1040, Dockets 83-7909, 83-7933.
 United States Court of Appeals,
Second Circuit.
 Argued April 16, 1984.
Decided July 30, 1984.
As Amended Oct. 1, 1984.
 
 Aaron J. Broder, New York City (Bailey & Broder, New York City, Edward S. Rudofsky, David H. Fromm, Frederick Polatsek, Zane & Rudofsky, New York City, on the brief), for plaintiff-appellee.
 Randal R. Craft, Jr., New York City (Peter Hoenig, Alan D. Reitzfeld, Laurence M. Harnett, Haight, Gardner, Poor & Havens, New York City, Garrett J. Fitzpatrick, Kevin F. Cook, Mendes & Mount, New York City, on the brief), for defendants-appellants.
 Before FRIENDLY, PIERCE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Defendants American Airlines, Inc. and McDonnell Douglas Corporation appeal from a final judgment entered after a jury trial before Judge Sweet. This is a wrongful death diversity action in which the parties have entered into a no-contest stipulation as to defendants' liability. The jury verdict consisted of a damage award in the amount of $7,010,000. In an opinion with which familiarity is assumed, Judge Sweet held that manifold errors had denied the defendants a fair trial and that the verdict was excessive. Shu-Tao Lin v. McDonnell Douglas Corp., 574 F.Supp. 1407 (S.D.N.Y.1983). He ordered a new trial unless the plaintiff accepted a remittitur in the amount of $4,274,500.
 
 
 2
 The plaintiff accepted this offer, and final judgment was entered. On appeal, defendants argue that the judgment as remitted is still excessive and request as relief either a recalculated remittitur or a new trial. Because we conclude that use of remittitur deprived the defendants of their right to a jury trial on the issue of pecuniary loss, we reverse and remand for further proceedings. We affirm the verdict as to pre-impact pain and suffering.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 The decedent, Shu-Ren Lin, M.D., was killed on May 25, 1979, when the American Airlines jet in which he was a passenger crashed shortly after takeoff from Chicago's O'Hare International Airport. At the time of his death, Dr. Lin, age 42, was an associate professor of neuroradiology at the University of Rochester Medical School. He was married and had four children, then of ages 15, 14, 9, and 1. The administrator of decedent's estate, Shu-Tao Lin, brought this action to recover damages for Dr. Lin's death as well as for the pain and suffering he may have experienced in the period immediately preceding the crash.
 
 
 4
 After the case had been transferred by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois for proceedings common to the many actions arising out of the crash, the parties entered into a no-contest stipulation on the issue of defendants' liability. The case was then returned to the Southern District of New York for a trial on the issue of damages.
 
 
 5
 After a five-week trial, the jury returned a verdict of $7,000,000 for the pecuniary loss suffered by Dr. Lin's wife and children as a result of his death. Using a special verdict form, the jury expressly based the award on a finding that Dr. Lin would have "continued to practice in his profession substantially as he had prior to his death and would not have entered the private practice of neuroradiology." The jury also awarded $10,000 for Dr. Lin's pre-impact pain and suffering.
 
 
 6
 After entry of judgment, the defendants moved to set aside the component of the jury's verdict relating to pecuniary injury and for a new trial on that issue. At the same time, they argued that the jury's finding relating to Dr. Lin's future practice should be preserved in any subsequent trial. The defendants also moved for judgment notwithstanding the verdict on the issue of Dr. Lin's pre-impact pain and suffering.
 
 
 7
 In ruling on these motions, Judge Sweet held that various errors committed before and during the trial combined to deny the defendants their right to a fair trial.[1] 574 F.Supp. at 1409-13. Most important was the admission of testimony by Dr. Mantell, an economist who testified for the plaintiff concerning Dr. Lin's likely future income stream. Judge Sweet concluded that some of Dr. Mantell's estimates were based on contradictory factual assumptions while others were utterly unsupported by the record. His testimony was, therefore, neither probative nor based on data "of a type reasonably relied upon by experts in the particular field," as required by Fed.R.Evid. 703.[2] Moreover, even if some of Dr. Mantell's testimony was admissible, the defendants never had an opportunity in pretrial discovery to examine his computer methodology and thus were impaired in conducting an effective cross-examination.[3]
 
 
 8
 Noting that in the last full year of his life Dr. Lin had earned $56,000 and that the jury's award could be invested to afford Dr. Lin's family some $700,000 in annual tax-free income, Judge Sweet concluded that the net effect of the errors had been to produce an excessive verdict and to deny the defendants a fair trial. Rather than grant the defendants' motion for a new trial outright, however, he offered the plaintiff a remittitur, permitting a choice between the certainty of a lowered verdict and the uncertainty of further proceedings.
 
 
 9
 To derive what he believed to be the appropriate remittitur, Judge Sweet computed the damages de novo to determine the amount a "properly functioning jury--one not misled by the prejudicial evidence presented in this trial--would have awarded." 574 F.Supp. at 1415. He concluded that a properly functioning jury would have awarded the plaintiff $4,274,500, $3,864,000 of which represented compensation for the loss of Dr. Lin's financial support, $400,000 for the loss to Dr. Lin's children of his nurture, care and guidance, and $10,000 for Dr. Lin's pre-impact pain and suffering.[4] Among the assumptions used by Judge Sweet to derive these figures were: (1) in computing the present value of Dr. Lin's projected future income stream, no adjustment for Dr. Lin's potential income tax liability was necessary since Dr. Lin's family would incur taxes on the income earned on the damage award and the two liabilities would effectively cancel each other out; (2) the loss of Dr. Lin's nurture, care and guidance could be valued by hypothesizing that his children might compensate for his loss by seeking psychiatric help and that the reasonable cost of such help would be $100,000 per child; (3) prejudgment interest was not included as an element of the award; and (4) the jury's award of $10,000 for Dr. Lin's pre-impact pain and suffering should be included in the judgment.
 
 
 10
 Based on his calculation of what a properly functioning jury would have awarded, Judge Sweet offered the plaintiff the choice between the remittitur and a new trial. He did not explicitly rule on the defendants' motion that a new trial must proceed on the factual assumption, as found by the jury, that Dr. Lin "would have continued to practice his profession substantially as he had prior to his death." The plaintiff accepted the remittitur and defendants appealed. On appeal, defendants renew their contention that a new trial should be granted on the limited issue of the pecuniary injury inflicted by the loss of the income stream Dr. Lin would have earned if he continued to practice "substantially" as he had before his death. Alternatively, they seek an appellate recomputation of the damages.
 
 
 11
 We reverse and remand for further proceedings with regard to pecuniary loss. We affirm the award for pre-impact pain and suffering.
 
 DISCUSSION
 
 12
 We agree that defendants did not have a fair trial. Numerous errors occurred in the course of the trial. The most prejudicial of these was allowing the jury to consider as evidence Dr. Mantell's lengthy, extravagant, and non-probative projections of Dr. Lin's future income. Moreover, because defendants lacked the opportunity for adequate pretrial discovery, their cross-examination may have been less probing than one prepared with foreknowledge of Dr. Mantell's testimony. Even if this jury had found damages identical to those ultimately calculated by Judge Sweet, therefore, the verdict could not stand.
 
 
 13
 The question thus becomes whether it was proper for the district judge to use the device of remittitur to make his own calculation of the plaintiff's damages. We hold that it was not and, therefore, remand for a new trial. In the interests of judicial economy, however, we do not limit our decision to an order for a new trial. Rather, since some of the assumptions underlying Judge Sweet's calculation of damages will inevitably reappear in this litigation either as jury instructions or as rulings of law, and since these issues have been fully argued on this appeal, we examine certain of them for their conformity with applicable state law.[5] We also consider the scope of the issues to be addressed in the new trial.
 
 
 14
 a) Use of a Remittitur
 
 
 15
 Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial. See generally 6A J. Moore, Moore's Federal Practice p 59.08 (2d ed. 1983); Note, Remittitur Practice in the Federal Courts, 76 Colum.L.Rev. 299 (1976). The practice has come to be employed in two distinct kinds of cases: (1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, see, e.g., Joiner Systems, Inc. v. AVM Corp., 517 F.2d 45, 49 (3d Cir.1975); and (2) more generally, where the award is "intrinsically excessive" in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error, see, e.g., Lanfranconi v. Tidewater Oil Co., 376 F.2d 91, 96-97 (2d Cir.), cert. denied, 389 U.S. 951, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). Crucial to the practice of remittitur in either kind of case is the requirement that the court confine its role to the removal of the excess portion of the verdict so that the "damage calculation leaves in the judgment a portion of what the jury awarded." Akermanis v. Sea-Land Service, Inc., 688 F.2d 898, 902 (2d Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983); see Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935) (remittitur "merely lop[s] off an excrescence").
 
 
 16
 Since the nature of the errors in the instant case yields no particular quantifiable amount by which to reduce the award for pecuniary loss, we deal here with the second kind of case, namely intrinsically excessive damages. Courts have developed conflicting rules about how to compute the "excrescence" in such cases. Some reduce the verdict to the maximum amount a reasonable jury could have awarded, see, e.g., Reinertsen v. George W. Rogers Construction Corp., 519 F.2d 531 (2d Cir.1975); others reduce it to what they believe a properly functioning jury would have awarded, see, e.g., Uris v. Gurney's Inn Corp., 405 F.Supp. 744 (E.D.N.Y.1975); and at least a few courts reduce the verdict to the minimum amount a reasonable jury could have awarded, see, e.g., Meissner v. Papas, 35 F.Supp. 676 (E.D.Wis.1940).
 
 
 17
 We need not choose among these various rules, however, for these formulations are not appropriate for use in the instant case. These formulations are designed for circumstances in which a properly instructed jury hearing properly admitted evidence nevertheless makes an excessive award. They are not designed for a case such as the present one, in which prejudicial error has infected the jury's entire consideration of plaintiff's pecuniary loss. See International Paper Co. v. Busby, 182 F.2d 790, 792 (5th Cir.1950). In such circumstances, it is impossible to preserve a portion of the jury's verdict, as Akermanis teaches, 688 F.2d at 902, by starting with the jury's verdict and cutting it down. Instead, one must proceed to calculate the damages from zero and build up. While this distinction may seem purely semantic, it is not, since building a damage award for pecuniary loss from zero up disregards the jury's verdict entirely and deprives the defendants of their right to trial by jury. We must, therefore, remand for a new trial.
 
 
 18
 b) The Assumptions Underlying the District Court's Award
 
 
 19
 Anticipating that we might also attempt to recalculate a proper remittitur, the parties have briefed the propriety of the assumptions underlying Judge Sweet's calculation of damages. Because we refuse to calculate a remittitur for the reasons expressed supra, the question of proper assumptions is not, strictly speaking, before us. Nevertheless, since at least some of these assumptions will almost surely reappear as jury instructions or legal rulings at a new trial, we address them in the interests of judicial economy and bringing this litigation to a conclusion.
 
 1) The Tax Liability Issue
 
 20
 In a ruling made during the trial, Judge Sweet held in the absence of a controlling New York authority that, in an action brought under the New York wrongful death statute, N.Y.Est.Powers & Trusts Law Sec. 5-4.3 (McKinney 1981), the New York Court of Appeals would embrace the reasoning of the United States Supreme Court in Norfolk & Western Railway v. Liepelt, 444 U.S. 490, 493-94, 100 S.Ct. 755, 757-58, 62 L.Ed.2d 689 (1980) (jury must be instructed as to effect of taxes on future earnings in actions under the Federal Employers' Liability Act). Adopting Liepelt would allow a defendant in a New York wrongful death action to introduce evidence that a decedent's future income stream would have been subject to the income tax. In making his calculation of damages, Judge Sweet adhered to this ruling but then denied it practical effect by further holding that the trier of fact should also consider that the income stream produced by the damage award would be subject to tax. Assuming that these two potential tax liabilities would produce a wash, he made no allowance for Dr. Lin's potential income tax liability in computing the damage award. 574 F.2d at 1415.
 
 
 21
 Although it is possible that plaintiff may have had the right to cross-appeal under Akermanis, 688 F.2d at 903,[6] from Judge Sweet's ruling on the applicability of Liepelt under New York law, he did not do so. Thus, we lack the benefit of briefing by either party on this important and controversial question of New York law. Compare Vasina v. Grumman Corp., 644 F.2d 112, 118 (2d Cir.1981) (no case "suggests that the New York Court of Appeals would embrace Liepelt today") with Gilliard v. New York City Health & Hospitals Corp., 77 A.D.2d 532, 430 N.Y.S.2d 308 (1st Dep't 1980) (decedent's tax liability among the factors considered in finding jury verdict excessive). Under these circumstances, we choose not to address the question of whether the Court of Appeals would adopt Liepelt 's reasoning in wrongful death cases.[7]
 
 
 22
 The other side of the tax question--whether the trier of fact should consider the effect of taxes on the income produced by the award--was briefed, however. We assume, for purposes of resolving this question, that the trier of fact may consider the decedent's potential tax liability in accord with Liepelt.
 
 
 23
 We believe that a trier may not conclude that taxes will likely be paid on income produced by the award, absent evidence that such will be the case. We take judicial notice, as did Judge Sweet elsewhere in his opinion, that should the plaintiff desire, the entire award could be invested at the present time in tax-free securities yielding about 10% annually at current market rates. 574 F.Supp. at 1413. We further note that through investment in a properly diversified portfolio of such securities, the award can yield not only tax-free income but also virtually risk-free income. We thus fully agree with the Fourth Circuit that there is "no basis for an adjustment for a tax liability which is avoidable and may never be incurred." Flannery v. United States, 718 F.2d 108, 112 (4th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984) (action under the Federal Tort Claims Act). We see no reason why the New York Court of Appeals would not agree as well, even if it adopted Liepelt. Upon remand, a special verdict form should be devised to allow separate review of the Liepelt issue.
 
 2) Prejudgment Interest
 
 24
 We next consider the applicability of prejudgment interest to whatever award is ultimately made in this case. The New York wrongful death statute provides that "[i]nterest upon the principal sum recovered by the plaintiff from the date of the decedent's death shall be added to and be a part of the total sum awarded." N.Y.Est. Powers & Trusts Law Sec. 5-4.3 (McKinney 1981). The parties agree that this language mandates the award of some prejudgment interest but disagree as to how much. Plaintiff contends that such interest has accrued on the entire award while defendants would limit it to the losses deemed to have occurred between the date of the decedent's death and the entry of judgment.
 
 
 25
 Although case law on this question is surprisingly scant, we think it reasonably clear that the wrongful death statute should be construed as defendants contend. The purpose of the statute is to compensate for " 'pecuniary injuries' suffered by the distributees of decedent's estate." Parilis v. Feinstein, 49 N.Y.2d 984, 985, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980). The prejudgment interest provision implements this goal by ensuring that the distributees are compensated for the time value of the income stream the decedent would have earned between death and the entry of judgment. We conclude that a wrongful death recovery for lost future income under New York law is thus effectively split into two components: (1) compensation for prejudgment losses, as to which interest is applied at a statutory rate, N.Y.Civ.Prac.Law Sec. 5004 (McKinney Supp.1983); and (2) compensation for post-judgment losses, which are discounted to present value in order to offset future earning power of a present lump sum award for future losses. Were prejudgment interest applied to the component of the award intended to compensate the plaintiff for post-judgment losses, plaintiffs would effectively receive a double recovery. Finding no basis for such a double recovery, we hold that prejudgment interest is limited under New York law to losses suffered between the date of death and the entry of judgment.[8] Accord Petition of the City of New York, 332 F.2d 1006 (2d Cir.1964) (admiralty action disallowing award of prejudgment interest on future post-judgment losses).
 
 3) Loss of Nurture, Care and Guidance
 
 26
 Recovery for wrongful death under New York law includes compensation not only for the loss of "direct financial benefits" but also for the loss of the nurture, care and guidance decedents would provide their children had death not intervened. Zaninovich v. American Airlines, Inc., 26 A.D.2d 155, 271 N.Y.S.2d 866 (1966). Assessing the pecuniary value of such loss is of course problematic, and it is hardly surprising that New York courts and juries appear to fashion somewhat arbitrary amounts in doing so. See, e.g., Long v. City of New York, 81 A.D.2d 880, 439 N.Y.S.2d 58 (2d Dep't 1981) (jury award of $150,000 for loss of nurture reduced to $75,000); Juiditta v. Bethlehem Steel Corp., 75 A.D.2d 126, 428 N.Y.S.2d 535 (4th Dep't 1980) (jury award of $100,000 for loss of nurture upheld). We thus sympathize with Judge Sweet's decision to "speculate" about the pecuniary value of the loss of nurture, 574 F.Supp. at 1414.
 
 
 27
 Nevertheless, we perceive no support for the analogy between Dr. Lin's role as a father and that of a psychiatrist and no factual basis upon which to predict that in his absence his children might seek psychiatric care. The calculation of such damages, however difficult, is not made more accurate by the use of unfounded assumptions, especially when such assumptions generate a recovery significantly larger than appears typical for this type of loss in New York courts. See, e.g., Long v. City of New York, 81 A.D.2d at 880, 439 N.Y.S.2d at 59 ($75,000 awarded for infant's loss of nurture). We therefore reject the use of psychiatric costs as relevant to the value of lost nurture, care and guidance.
 
 
 28
 Defendants also attack the award for nurture, care and guidance on the ground that it should have been discounted to present value. We agree, although we have not found a New York decision explicitly discounting such an award. However, Dr. Lin presumably would have offered his children nurture, care, and guidance throughout the period of time preceding their majority. To the extent that a present lump sum award compensates a child financially for such care in later years, the award represents the present payment of future value and should be discounted accordingly.[9] Cf. Gretchen v. United States, 618 F.2d 177, 181 (2d Cir.1980) (awards for future pain and suffering under federal Public Vessels Act should be discounted to present value).[10]
 
 4) Pre-impact Pain and Suffering
 
 29
 Independent of his calculation of the remittitur, Judge Sweet denied the defendants' motion for judgment notwithstanding the verdict on the jury's award of $10,000 for the fear and apprehension of death experienced by Dr. Lin in the seconds before impact.
 
 
 30
 We conclude that New York law does permit recovery for a decedent's pre-impact fear for substantially the reasons set forth in Judge Sweet's opinion. 574 F.Supp. at 1416-17. A decedent's representative unquestionably may recover for pain and suffering experienced in a brief interval between injury and death. Juiditta v. Bethlehem Steel Corp., 75 A.D.2d at 138, 428 N.Y.S.2d at 543 (4th Dep't 1980) ($70,000 for pain and "apprehension of impending death" experienced during a one-hour period). We see no intrinsic or logical barrier to recovery for the fear experienced during a period in which the decedent is uninjured but aware of an impending death. The Appellate Division has implicitly embraced this view in dismissing such a suit, not for failure to state a claim, but for lack of "evidence ... that the decedents were aware of the danger and suffered from preimpact terror." Anderson v. Rowe, 73 A.D.2d 1030, 1031, 425 N.Y.S.2d 180 (4th Dep't 1980).
 
 
 31
 We further hold that plaintiff introduced sufficient evidence to give the issue of Dr. Lin's pre-impact pain and suffering to the jury and that the $10,000 award is not excessive.
 
 
 32
 In Shatkin v. McDonnell Douglas Corp., 727 F.2d 202 (2d Cir.1984), which arose out of the same crash, we concluded that there was insufficient evidence to support a finding that a passenger seated on the right side of the plane suffered any pre-impact conscious pain and suffering or that he was even aware of the impending disaster until approximately three seconds before the crash. In contrast, Dr. Lin had been assigned a seat over the left wing and, viewing the evidence in the light most favorable to the plaintiff, we conclude that a jury might find that he saw the left engine and a portion of the wing break away at the beginning of the flight, which lasted some thirty seconds between takeoff and crash.[11]
 
 
 33
 c) Scope of the Retrial
 
 
 34
 We turn now to the question of whether the issues of Dr. Lin's future practice and pre-impact pain and suffering must be retried.
 
 
 35
 Defendants argue that damages for pecuniary loss should be calculated at the new trial upon the basis of the original jury's special verdict finding that "Dr. Lin would have continued to practice his profession substantially as he had prior to his death and would not have entered the private practice of neuroradiology." We disagree.
 
 
 36
 We recently reviewed the relevant authorities with regard to the scope of new trials where part of a jury verdict is set aside. Crane v. Consolidated Rail Corp., 731 F.2d 1042, 1049-51 (2d Cir.1984). Familiarity with that discussion is assumed. In Crane, a jury had reduced a damage award by 50% on grounds of the plaintiff's contributory negligence. That reduction was set aside in its entirety, however, as against the weight of the evidence, and we held that plaintiff was not thereby entitled to a retrial as to the amount of damages.
 
 
 37
 The present case differs in material respects. In Crane, the damage verdict was a dispositive finding leading to a separable legal conclusion capable of independent resolution. Moreover, in view of the disposition of that case, every other issue was finally resolved, and a retrial would involve only the unchallenged part of the prior verdict.
 
 
 38
 In the instant case, however, the prior special verdict in question resolved only one of many interrelated adjudicative facts necessary to reach an ultimate legal conclusion. A retrial limited as defendant requests would not save time and would lead to considerable confusion. The conclusion that Dr. Lin would have "substantially" continued his "prior" practice is so general as to create considerable ambiguity as to what the prior jury had in mind. In view of the size of the verdict, it probably believed that he would have earned very considerable sums as an academic consultant or clinician in a growing diagnostic field. However, a belief that his future income would consist for the most part of only his academic salary is also consistent with the general conclusion as it is stated in the special verdict. Two radically different views of the pecuniary loss suffered thus fit comfortably within the confines of the special verdict. Moreover, the finding that Dr. Lin would not have entered private practice is not separable from the more general conclusion that he would have continued his prior practice. Indeed, it seems probable that the private practice finding resulted from the first jury's high estimate of his earnings as an academic consultant or clinician. Finally, no judicial economies will result from a retrial so limited since the next jury will likely have to hear the same evidence in order to understand what the prior jury had in mind. Wrangles over variations in testimony or the relevance of new evidence will inevitably result and will not be easily resolved. A limited retrial is thus a course fraught with uncertainty, delay, and opportunities for error and unfairness. We therefore remand with instructions to retry the entire case as to damages.
 
 
 39
 For similar reasons, however, the verdict and judgment as to pre-impact pain and suffering must be affirmed. It is wholly separable and foregoing a retrial will simplify further proceedings.
 
 
 40
 The verdict and judgment as to pre-impact pain and suffering are affirmed.
 
 
 41
 The remainder of the judgment is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The errors are fully set out in Judge Sweet's opinion, and we summarize only the more important ones
 
 
 [2]
 As an alternative ground for exclusion, Judge Sweet held that under Fed.R.Evid. 403 the probative value of the expert's testimony was outweighed by its prejudicial effect. In view of the extravagant nature of Dr. Mantell's estimates, that conclusion follows a fortiori from the finding that his testimony lacked a scientific basis
 
 
 [3]
 This case, which consumed five weeks for trial and will now have to be retried, clearly demonstrates the importance of ensuring that adequate discovery of experts takes place prior to the start of trial. Such discovery not only affords the parties an opportunity to prepare cross-examination but also affords the district court an opportunity to assess the admissibility of the testimony before the jury hears it
 
 
 [4]
 Adding these three figures together yields the sum of $4,274,000. We are unable to determine why judgment was entered for $4,274,500
 
 
 [5]
 When state law claims are tried in a federal court, the scope of a party's right to a jury trial is a seventh amendment question, while the method of calculating the recoverable damages is a question of state law. Gagne v. Town of Enfield, 734 F.2d 902, at 905 (2d Cir.1984). The parties have assumed that the law of New York applies to the latter question. We see no reason to question this assumption
 
 
 [6]
 Akermanis arguably permits a cross-appeal by a plaintiff accepting a remittitur only when resolution of the cross-appeal in the plaintiff's favor would eliminate the need for a new trial. In this case, of course, resolution of the Liepelt issue would not do so. We do not decide whether Akermanis is so limited, because it is clear that plaintiff was not obliged to cross-appeal to preserve the Liepelt issue
 
 
 [7]
 The Seventh Circuit has recently suggested that, notwithstanding Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity may view Liepelt as establishing a procedural rule on the admissibility of evidence and disregard state law. In re Air Crash Disaster Near Chicago, Ill., 701 F.2d 1189, 1195 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 204, 78 L.Ed.2d 178 (1984). Our decisions, on the other hand, have assumed that state law controls this point, see, e.g., Vasina v. Grumman Corp., 644 F.2d at 118 (2d Cir.1981)
 
 
 [8]
 We recognize that the practice of dividing lost future income damage awards into pre- and post-judgment components as described supra has recently come under criticism. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 2551 n. 22, 76 L.Ed.2d 768 (1983). However, in cases involving federal law, a specific method has been developed for the computation of the value of lost future income
 
 
 [9]
 By the same token, prejudgment interest can be applied to that portion of any nurture, care and guidance award deemed to represent losses suffered between the date of Dr. Lin's death and the entry of judgment. See supra
 
 
 [10]
 It was once believed to be an open question whether under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), discounting in a diversity case was a matter of state or federal law. Chiarello v. Domenico Bus Service, Inc., 542 F.2d 883, 886 n. 5 (2d Cir.1976). More recently, we have held that state law governs the issue. O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842, 857 n. 24 (2d Cir.1984)
 
 
 [11]
 O'Rourke v. Eastern Airlines, Inc., 730 F.2d at 854-55 is not to the contrary. That decision merely affirmed a discretionary ruling that the testimony of a fellow passenger who neither saw nor knew what happened to the decedent in a five-to-ten second period was irrelevant