**Vito TALIERCIO, Plaintiff-Appellee Cross-Appellant,**

v.

**COMPANIA EMPRESSA LINEAS ARGENTINA, Defendant-Appellant Cross-Appellee.**

**Nos. 890, 940, Docket 84–7918, 84–7936.**

United States Court of Appeals, Second Circuit.

Argued March 14, 1985.

Decided May 3, 1985.

Morris Cizner, New York City (Zimmerman & Zimmerman, New York City, of counsel), for plaintiff-appellee, cross-appellant.

John R. Geraghty, New York City (John P. James, Richard A. Senftleben, Healy & Baillie, New York City, of counsel), for defendant-appellant, cross-appellee.

Before KAUFMAN, CARDAMONE, Circuit Judges, and TENNEY, Senior District Judge.*

TENNEY, District Judge.

The defendant, Compania Empressa Lineas Argentina ("ELMA"), appeals from a judgment of the United States District Court for the Southern District of New York, Charles Stewart, District Judge, awarding the plaintiff $665,846 in damages for personal injuries, together with prejudgment interest of $21,942. The plaintiff, a longshoreman, was injured while working on the defendant's ship.

On appeal, the defendant contends that the district court's determination of liability

is clearly erroneous. On cross-appeal, the plaintiff claims that the district court's computation of prejudgment interest was incorrect. For the reasons stated briefly below, we affirm the district court's decision in all respects.

## BACKGROUND

After a bench trial, the plaintiff, Vito Taliercio ("Taliercio"), was awarded damages for injuries he sustained while working on the defendant's ship in 1979.[1] The plaintiff was injured when a sliding steel door fell on him. The door was approximately three feet wide and eight feet high. It weighed 1100 pounds. The door was one of two sliding doors that had been unlocked and opened by the ship's crew so that cargo could be deposited in the ship's locker.

Taliercio accidently struck one of the sliding doors while he was driving a hi-lo. A hi-lo is similar to a forklift. Because Taliercio could not free the hi-lo from the door, he got off of the hi-lo. Another longshoreman, who took Taliercio's place on the hi-lo, managed to free the hi-lo within a few minutes. After the hi-lo was freed, the sliding door fell off its track and toppled onto Taliercio, injuring him.

The district court found that both the plaintiff and defendant were negligent, and apportioned liability accordingly. The court held that the defendant was 80% responsible for the plaintiff's injuries. On appeal the defendant argues that the plaintiff was solely responsible for his own injuries and that the district court erred in finding the defendant liable.

## DISCUSSION

### I. *Liability*

The district court's conclusion that the defendant was negligent is fully supported

---

* Of the Southern District of New York, sitting by designation.

1. It appears that this action was litigated under federal law—the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1982), or general maritime law—rather than state law. Our conclusion is

based on the defendant's answer, the parties' briefs and trial memoranda, and the district court's opinions. Although none of these documents specifically state the legal basis of the action, they all rely on provisions of LHWCA, or cases based on general maritime law or based on LHWCA.

by the evidence. The defendant-shipowner had a duty to inspect, maintain and repair the steel door that fell. The door was in poor condition and therefore posed an unreasonable risk of harm. If the door had been in good condition, it would not have fallen when the plaintiff ran into it. The defendant knew or should have known that the door needed repair, and by failing to repair the door, defendant breached its duty of care. Thus, the shipowner was clearly at fault.

The applicable law, which is not in dispute here, can be summarized briefly. When a shipowner employs longshoremen, the shipowner must exercise due care in order to avoid exposing the longshoremen to injury from equipment that is under the shipowner's control. *See Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981). The shipowner has a duty to maintain the vessel in a reasonably safe condition. *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir.1980), *cert. denied sub nom. Pittston Stevedoring Corp. v. Doca*, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981), (citing W. Prosser, Handbook on the Law of Torts, § 61 (4th ed. 1971); Restatement (Second) of Torts § 343). A shipowner will be held liable "for injuries resulting from obvious dangers which it should reasonably anticipate that the longshoremen would be unable to avoid." *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 509 (2d Cir.1976).

The question of whether or not a shipowner has acted negligently is a question of fact. *See Lieggi v. Maritime Co. of the Philippines, "M/V Philippine Rizal"*, 667 F.2d 324, 328 (2d Cir.1981); *Napoli*, 536 F.2d at 509. In the instant case, the trial court's findings concerning negligence are amply supported by the evidence.

It is undisputed that the appellant-shipowner was responsible for the maintenance of the door in question. The longshoremen employed by ELMA, including the appellee, had no responsibility to inspect or repair the door. The Chief Mate of the ship testified that the sliding door in question was always opened by an officer of the ship, who was responsible for inspecting the door before opening it. The two officers that unlocked and opened the sliding door admitted that they did not inspect the door when they opened it.

The record shows that the door which fell was not properly maintained: certain portions of the door were broken, rusted, bent or missing, and the door was not suspended securely. Because of the door's weight and size, its defects made it an unreasonable hazard. The shipowner breached its duty of care by failing to maintain the door in a reasonably safe condition, and the shipowner's negligence was a proximate cause of Taliercio's injuries.

The appellant argues, however, that even if it did maintain the door in a negligent fashion, it should be discharged from all liability because it met its duty of due care by warning the appellee of danger. After Taliercio hit the door with the hi-lo, one of the ship's crew members shouted that the door was dangerous and everyone should get away from it. The shipowner asserts that because of the crewman's conduct, the shipowner effectively issued a warning concerning the danger of the door, thereby fulfilling its duty of due care.

The warning given, however, was not sufficient to relieve the defendant of liability. The warning was given at the moment of danger and after the course of events had been set in motion. Such a warning cannot substitute for the duty to inspect equipment under the shipowner's control, nor can it replace the duty to repair such equipment.

Because Taliercio failed to heed the crewman's warning, the district court reduced the damages awarded to reflect the plaintiff's contributory negligence. The evidence justified the district court's decision to allocate responsibility; the evidence did not compel a finding that the defendant should be relieved of all liability.

## II. *Prejudgment interest*

The district court awarded $21,942 in interest on damages incurred by the plaintiff

prior to judgment. On cross-appeal, Taliercio argues that the district court's computation of prejudgment interest was incorrect, and that the case should be remanded for a redetermination of interest. We disagree.

The district court divided the damages award[2] into two components: (1) damages for prejudgment losses, and (2) damages for post-judgment losses. The court awarded interest on the prejudgment losses incurred during the five year period between the date of injury and the date of judgment.

In *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), the Supreme Court criticized the practice of dividing damage awards into prejudgment and post-judgment components—the method adopted by the district court in this case. The Supreme Court stated:

> At one time it was thought appropriate to distinguish between compensating a plaintiff "for the loss of time from his work which has actually occurred up to the time of trial" and compensating him "for the time which he will lose in the future." C. McCormick, Damages § 86 (1935). This suggested that estimated future earning capacity should be discounted to the date of trial, and a separate calculation should be performed for the estimated loss of earnings between injury and trial.... It is both easier and more precise to discount the entire lost stream of earnings back to the date of injury—the moment from which earning capacity was impaired. The plaintiff may then be awarded interest on that discounted sum for the period between injury and judgment, in order to ensure

that the award when invested will still be able to replicate the lost stream. *Id.* at 2551 n. 22 (dictum) (citations omitted).[3]

The appellee argues that the case at bar should be remanded so that prejudgment interest can be redetermined in accordance with *Pfeifer*. Although we agree that the *Pfeifer* approach is better than the one used by the district court in this case, we nevertheless affirm the district court's decision.

 The determination of prejudgment interest is placed within the discretion of the trial court. *See Waterside Ocean Nav. Co. v. International Nav. Ltd.*, 737 F.2d 150, 153–54 (2d Cir.1984); *Independent Bulk Transport, Inc. v. Vessel "Morania Abaco"*, 676 F.2d 23, 25–27 (2d Cir. 1982). In the case at bar, the district court did not abuse its discretion. Furthermore, the question of whether such apportionment is correct was not raised prior to this appeal. Indeed, at trial, the plaintiff requested that damages be separated into past and future losses, and that interest then be awarded on the past losses. The trial court's decision is therefore affirmed.

In the future, however, when trial courts in this circuit discount damages to present value, we believe it would be preferable to calculate interest in accordance with the *Pfeifer* formula: the entire award should be discounted back to the date of injury, and prejudgment interest should be awarded on that amount.

Affirmed.

**2.** Damages were awarded for pain and suffering, and for lost wages.

**3.** In *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45 (2d Cir.1984), this court addressed the question of how pre-judgment interest should be calculated in wrongful death actions under New York law. The court concluded that under New York law, interest should be awarded solely on the losses that occur prior to judgment; applying New York law, the court declined to discount the entire amount of damages back to the date of death, and award interest on the entire discounted amount. *Id.* at 51–52.

The *Shu-Tao Lin* decision does not bar the application of the *Pfeifer* formula in cases involving federal law. *Shu-Tao Lin* concerns only the proper construction of the New York wrongful death statute, N.Y. Est. Powers & Trusts Law § 5–4.3 (McKinney 1981).