Marjorie ZICHERMAN, Executrix of the Estate of Muriel A.M.S. Kole, and Muriel Mahalek, Plaintiffs,

v.

KOREAN AIR LINES CO., LTD., Defendant.

No. 83 Civ. 8428 (CBM).

United States District Court, S.D. New York.

Jan. 26, 1993.

See also 814 F.Supp. 592, 146 F.R.D. 61, 814 F.Supp. 599.

Needham & Warren, Boston, MA, by W. Paul Needham, Kevin M. Hensley, Christopher Lovell, P.C., New York, NY, for plaintiffs Marjorie Zicherman and Muriel Mahalek.

Condon & Forsyth, New York, NY, by George N. Tompkins III, for defendant Korean Air Lines, Inc.

## OPINION ON PREJUDGMENT INTEREST

MOTLEY, District Judge.

### I. BACKGROUND

This case arises out of the tragic downing of Korean Air Lines ("KAL") Flight KE007. On September 1, 1983, while the plane was on route from New York to Seoul, South Korea, the plane strayed into Soviet airspace and was shot down by Soviet military aircraft over the Sea of Japan. All 269 persons aboard were killed. Muriel A.M.S. Kole was among those who perished. This action was commenced on November 18, 1983 by Muriel Kole's mother, Muriel Mahalek, and Muriel Kole's sister, Marjorie Zicherman in both her individual and representative capacities. There were numerous other actions filed around the country for wrongful death of the deceased passengers. These numerous death actions brought against KAL were consolidated and came on for common pretrial proceedings and trial of the common issues of liability in the United States District Court for the District of Columbia. *In re Korean Air Lines Disaster of Sep. 1, 1983,* 575 F.Supp. 342 (Judicial Panel on Multidistrict Litigation 1983).

On August 2, 1989, a jury found that KAL engaged in "wilful misconduct," proximately causing the deaths of the KAL Flight KE007 passengers. In addition, the jury awarded plaintiffs punitive damages. On appeal, the Court of Appeals for the District of Columbia Circuit upheld the jury's finding of "wilful misconduct" but set aside the punitive damage award as non-recoverable in a Warsaw Convention case. *In re Korean Airlines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1490 (D.C.Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). Plaintiffs and KAL individually filed petitions for writ of certiorari in the United States Supreme Court, both of which were denied on December 2, 1991. *Dooley v. Korean Air Lines, Ltd.,* — U.S. —, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). The common liability issues in this multidistrict case having been decided, the individual cases were returned to the various jurisdictions where they originally had been filed in order to determine compensatory damages as to each plaintiff.

A jury trial on the issue of compensatory damages in this case commenced on December 7, 1992.[1] At the conclusion of the trial, the jury returned a verdict in favor of plaintiff Muriel Mahalek, individually, in the amount of $124,000 for mental injury, past and future and loss of love, affection and companionship, past and future. The jury also returned a verdict in favor of plaintiff Marjorie Zicherman, in her individual capacity, in the amount of $151,000 for past loss of support, past and future mental injury, past and future loss of love, affection and companionship, and lost inheritance. The jury also found in favor of plaintiff Marjorie Zicherman, in her capacity as executrix of decedent's estate, in the amount of $100,000 for decedent's conscious pain and suffering before her death.

The parties previously agreed to reserve the question of prejudgment interest until after trial. For the reasons discussed below, plaintiffs are entitled to prejudgment interest.

---

1. Trial followed a decision by this court as to what damages were recoverable in a Warsaw Convention case and by whom. *See In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073 (1992).

## II. PREJUDGMENT INTEREST

### A. THE WARSAW CONVENTION

 This court has previously determined that the Warsaw Convention is the applicable law governing this case.[2] *In re Korean Air Lines Disaster of September 1, 1983*, 807 F.Supp. 1073 (1992). The Warsaw Convention, however, is silent as to the award of prejudgment interest. *See O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 852 n. 18 (2d Cir.1984). The Second Circuit considered the question of prejudgment interest under the Warsaw Convention in *O'Rourke*. *O'Rourke* involved the crash of Eastern Air Lines Flight 66 as it was on route from New Orleans to New York. The Public Administrator of one of the victims of the crash brought suit on behalf of the estate against Eastern and the United States. A jury found Eastern negligent and its verdict was affirmed on appeal. *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67 (2d Cir.1980). Following this affirmance, the District Court granted a motion by Eastern to limit its liability to $75,000 pursuant to the Montreal Agreement.[3] *O'Rourke v. Eastern Air Lines*, 16 Avi. L.Rep. 18,367 (E.D.N.Y. Jan. 29, 1982). The Second Circuit affirmed the District Court's denial of prejudgment interest. The court determined that awarding prejudgment interest in *O'Rourke* would be inconsistent with the intent of the framers of the Warsaw Convention and the supplemental Montreal Agreement to limit recovery against airlines for negligence to $75,000 to prevent airlines from going out of business. The court held that "[i]n the absence of any contrary intent on the part of the framers, we may not read into that document a provision that allows the payment of prejudgment interest above the $75,000 liability limitation." 730 F.2d at 853. *Compare Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 460 (5th Cir.), *cert. denied*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985) (where Warsaw Convention limit on recovery for lost cargo applies, prejudgment interest is recoverable).

*O'Rourke*, however, is not this case. Defendant in this case was found by a jury to have engaged in "wilful misconduct." Under the Warsaw Convention, when a defendant has engaged in "wilful misconduct," the $75,000 cap on liability expressly does not apply.[4] While *O'Rourke* concludes that the intent of the framers was not to exceed the $75,000 with the addition of prejudgment interest in situations where the Warsaw Convention dictates damages, where the cap is expressly removed pursuant to Article 25 of the Warsaw Convention, the rationale for restricting prejudgment interest is also removed. *O'Rourke* is, therefore, inapplicable to situations such as the present, where there has been "wilful misconduct" and where there is no limit on liability.

### B. FEDERAL COMMON LAW

The Second Circuit in *Lockerbie* held that the Warsaw Convention is a federally-created

---

**2.** Convention for the Unification of Certain Rules Related to International Transportation by Air, *done* at Warsaw, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* at 49 U.S.C.App. § 1502 note. The Warsaw Convention was supplemented by the Montreal Agreement, Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 18900, note following 49 U.S.C.App. § 1502 (approved by CAB Order E–23680, May 13, 1966, 31 Fed.Reg. 7302). Typically, airplane crash damages recovery under the Warsaw Convention is restricted by the $75,000 cap of the Montreal Agreement. However, where there is a finding of "wilful misconduct," as in this case, the cap does not apply.

**3.** The Montreal Agreement which is supplemental to the Warsaw Convention states that:

By this agreement, the parties thereto bind themselves to include in their tariffs, effective May 16, 1966, a special contract in accordance with Article 22(1) of the Convention or the Protocol providing for a limit of liability for each passenger for death, wounding, or other bodily injury of $75,000 inclusive of legal fees, and, in case of a claim brought in a State where provision is made for separate award of legal fees and costs, a limit of $58,000 exclusive of legal fees and costs.

*See supra* note 1.

**4.** Article 25 of the Warsaw Convention provides:

(1) The carrier shall not be entitled to avail [itself] of the provisions of this convention which exclude or limit [its] liability, if the damage is caused by [its] wilful misconduct or by such default on [its] part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

*See supra* note 1.

cause of action, preempting all state causes of action, and must be construed exclusively under federal common law where the Warsaw Convention, itself, is silent and where federal statutory law is helpful in reaching a determination. *See also In re Inflight Explosion on Trans World Airlines, Inc. Aircraft Approaching Athens, Greece on April 2, 1986,* 778 F.Supp. 625, 629 (E.D.N.Y.), *rev'd on other grounds,* 975 F.2d 35 (2nd Cir.1992). It is, therefore, necessary to look to federal law to determine whether or not plaintiffs are entitled to prejudgment interest. Thus, in developing the federal common law regarding the award of prejudgment interest under the Warsaw Convention where there has been a finding of "wilful misconduct," this court refers to the general treatment under federal common law of questions of prejudgment interest and looks to the intent of the framers of the Warsaw Convention. There is no federal statute governing prejudgment interest in Warsaw Convention cases and which determines the rate to be used.[5]

### 1. *Prejudgment Interest Under Federal Law*

■ Generally, where entitlement to prejudgment interest is not statutorily determined, it is within the court's discretion to determine whether or not an award for prejudgment interest is appropriate. In *West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987), which involved a dispute over a debt arising out of a contractual obligation, the Supreme Court determined that "[i]n the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be due." 479 U.S. at 308–09, 107 S.Ct. at 705 (*citing Royal Indemnity Co. v. United States,* 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361 (1941)). *See Wickham Contracting v. Local Union No. 3, IBEW,* 955 F.2d 831, 833, 835 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992) ("Our pre-

judgment interest decisions have been in accord with the Supreme Court's approach. We have allowed discretionary awards of prejudgment interest, notwithstanding the statute's silence on the subject of interest, when the awards were fair, equitable and necessary to compensate the wronged party fully"); *Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd.,* 737 F.2d 150, 153 (2d Cir.1984) (" '[w]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts' ") (*citing Lodges 743 & 1746, International Association of Machinists v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976)).

■ The purpose of prejudgment interest is compensatory. *United States v. Seaboard Surety Co.,* 817 F.2d 956, 966 (2d Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987) (*citing Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947)). *See also Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 637 F.2d 77, 87 (2d Cir.1980) ("An award of prejudgment interest is in the first instance, compensatory ...") KAL Flight KE007 was shot down more than nine years prior to the judgment in this case. Plaintiffs, in order to be fully compensated, are entitled to recover for the loss of the use of their damage award during that period.

Another court considering the same issue of prejudgment interest in a case involving the same air disaster determined that prejudgment interest was recoverable as part of the compensatory remedy. In *Saavedra v. Korean Air Lines Co., Ltd.,* No. 84 Civ. 9324, C.D.Ca., October 19, 1992, a Federal District Court considered the issue of prejudgment interest in relation to a damage suit brought by the family of another victim of KAL Flight KE007. The court in *Saavedra* concluded that plaintiffs were entitled to pre-

---

5. A prejudgment interest statute in New York, for example, allows recovery of prejudgment interest in contract cases and in cases concerning an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property and sets the rate at 9%. N.Y.Civ.Prac.L. & R. §§ 5001(a) & 5004.

judgment interest on past mental anguish, grief and sorrow of decedents' relatives, pre-death pain and suffering of decedents, and past loss of support. *Saavedra* at 3. Prejudgment interest in *Saavedra* was payable from the date of the accident to the date of judgment. *Saavedra* at 4.

### a. Admiralty

This Circuit, following long established federal law in admiralty, has determined that prejudgment interest is recoverable in admiralty cases generally. Plaintiff in *Magee v. United States Lines, Inc.,* 976 F.2d 821 (2d Cir.1992), sought damages for claims of unseaworthiness under the general maritime law and for negligence under the Jones Act, 46 U.S.C.App. § 688. In reversing the District Court's denial of prejudgment interest, the Second Circuit noted that this Circuit has consistently "held that 'in admiralty cases prejudgment interest should be granted in the absence of exceptional circumstances.'" *Magee,* 976 F.2d at 823 (*citing Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 310 (2d Cir.), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988)). *See also Middle East Engineering & Dev. Co. v. Arkwright–Boston Mfrs. Mut. Ins.,* 675 F.Supp. 855 (S.D.N.Y.1987) (absent extraordinary circumstances prejudgment interest should be awarded in admiralty cases).

Defendant argues that prejudgment interest should be denied because plaintiffs delayed the litigation by pursuing the possibility of punitive damages and bringing suit against the Soviet Union. As noted earlier, this was a multidistrict litigation case which in its earlier phase went all the way to the United States Supreme Court after a lengthy liability trial. Both defendant and plaintiffs have made strategic decisions during the course of this litigation which have delayed the final judgment. And any delay that plaintiffs may have caused by pursuing alternate causes of action or remedies does not justify denying them prejudgment interest unless their actions were extraordinary.

In *Federal Ins. Co. v. Sabine Towing & Transportation Co., Inc.,* 783 F.2d 347 (2d Cir.1986), defendant alleged that plaintiff's posture during settlement negotiations was unreasonable, and that an award for prejudgment interest should be denied as a result. The Second Circuit noted that "prejudgment interest will be denied in admiralty cases only under extraordinary circumstances" and, therefore, affirmed the District Court's award of prejudgment interest. *Sabine,* 783 F.2d at 352 n. 4. *See Mitsui & Co., Ltd. v. American Export Lines,* 636 F.2d 807, 823 (2d Cir.1981) ("Although the allowance of prejudgment interest in admiralty is said to be a matter committed to the trial court's discretion, it should be granted in the absence of exceptional circumstances") (citations omitted).

### b. DOHSA

 Throughout this litigation, defendant has urged that the Death On the High Seas Act ("DOHSA")[6] provides the exclusive remedy in this case under the Warsaw Convention. However, following the Second Circuit's precedent in *Lockerbie,* this court has determined that since the Warsaw Convention is itself a federal statute, this case is governed by that federal law which must be construed by looking to, applying and developing federal common law. *In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073, 1078. *See Lockerbie,* 928 F.2d at 1278–79. Nevertheless, if DOHSA were referred to, *arguendo,* in considering the issue of prejudgment interest, it would not preclude recovery because it is a statute relating to admiralty and passed with seamen's survivors in mind.

In *Moore–McCormack Lines, Inc. v. Richardson,* 295 F.2d 583 (2d Cir.), *cert. denied,* 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962), the Second Circuit considered the

---

**6.** Death On the High Seas Act, 46 U.S.C.App. § 761 *et seq.* DOHSA was enacted by Congress in 1920 to provide specifically for a remedy in admiralty for the dependent survivors of seamen for wrongful death on the high seas. DOHSA applies only when death occurs on the high seas more than a marine league (3 miles) from the shore of any state, the District of Columbia, or any territory of the United States and has been construed by the Supreme Court to limit dependent survivors' losses to pecuniary losses. *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 622–23, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581, *reh'g denied,* 439 U.S. 884, 99 S.Ct. 232, 58 L.Ed.2d 200 (1978).

availability of prejudgment interest under DOHSA which had been denied by the trial court. The Circuit Court noted that awarding prejudgment interest is a matter about which the District Court has discretion. *Richardson,* 295 F.2d at 592. *See also Solomon v. Warren,* 540 F.2d 777, 794 (5th Cir.), *reh'g denied,* 545 F.2d 1298 (5th Cir.), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977) ("The prevailing rule in [the Fifth Circuit] is that the award of prejudgment interest in death claims under DOHSA is discretionary with the trial court") (*citing National Airlines, Inc. v. Stiles,* 268 F.2d 400, 404–06 (5th Cir.), *cert. denied,* 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959)).

Despite the discretionary nature of the District Court's decision regarding prejudgment interest, the Court of Appeals in *Richardson* remanded the case for the allowance of prejudgment interest. The Second Circuit concluded that

> [t]he Death on the High Seas Act merely instructs that 'the recovery ... shall be a fair and just compensation for the pecuniary loss sustained.' We see nothing in this language to indicate that the Congress did not intend that the damages should give full compensation for *all* pecuniary loss sustained including that resulting from delay in being compensated.

*Richardson,* 295 F.2d at 592–93 (citations omitted) (emphasis in original). Awarding prejudgment interest, then, is consistent with the purpose of DOHSA.

#### c. Civil Rights Cases

■ In developing the federal common law as it pertains to damages available under the Warsaw Convention, this court has looked to other federal laws and how they have been construed. *See In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073, 1082. The civil rights laws are among the federal statutes which may be used in determining the federal common law under the Warsaw Convention.

In *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), the Supreme Court considered whether prejudg-

ment interest may be awarded in a suit against the United States Postal Service brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.*[7] In concluding that prejudgment interest may be awarded against the Postal Service, the Court noted that "all the United States Courts of Appeals that have considered the question agree, that Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers. This conclusion surely is correct." 486 U.S. at 557–58, 108 S.Ct. at 1970.

■ The Second Circuit has also determined that prejudgment interest is recoverable in civil rights cases, *See Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) ("Title VII authorizes a district court to grant prejudgment interest ..."), and that it is ordinarily an abuse of discretion not to award prejudgment interest. *Frank,* 960 F.2d at 1154 (*citing Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 58 (2d Cir.1984)).

#### d. Prejudgment Interest Under Other Federal Statutes

■ Similar to prejudgment interest under the Civil Rights Act, this Circuit has determined that prejudgment interest is also recoverable on damages awarded under § 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 217 (1982), and the Equal Pay Act, 29 U.S.C. § 206(d) (1982). The Second Circuit dealt with this question in *E.E.O.C. v. County of Erie,* 751 F.2d 79 (2d Cir.1984) and determined that since the goal of suit under FLSA and the Equal Pay Act is to make victims whole, it was "well within" the District Court's discretion to award prejudgment interest. *County of Erie,* 751 F.2d at 82.

### C. THE CASE AT HAND

The test for determining the appropriateness of prejudgment interest, as discussed by the court in *Wickham,* is "a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) consider-

**7.** While the Civil Rights Act of 1991 has been enacted subsequent to this decision, nothing in the later Act supersedes the Court's opinion in *Loeffler* regarding prejudgment interest.

ations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." 955 F.2d at 834 (citing *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); *Rodgers v. United States*, 332 U.S. 371, 373–74, 68 S.Ct. 5, 6–7, 92 L.Ed. 3 (1947); *Board of County Comm'rs of the County of Jackson v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939); *Miller v. Robertson*, 266 U.S. 243, 257–58, 45 S.Ct. 73, 78–79, 69 L.Ed. 265 (1924)).

The Supreme Court has permitted the award of prejudgment interest under a variety of federal laws on the basis of one or more of these considerations. See *Wickham*, 955 F.2d at 834 (citing *Loeffler*, 486 U.S. at 557–58, 108 S.Ct. at 1970 (suit for back pay under Title VII); *Jacobs v. United States*, 290 U.S. 13, 16–17, 54 S.Ct. 26, 27–28, 78 L.Ed. 142 (1933) (suit under takings clause of Fifth Amendment; interest viewed as part of "just compensation"); *Waite v. United States*, 282 U.S. 508, 509, 51 S.Ct. 227, 227, 75 L.Ed. 494 (1931) (patent law infringement suit; interest viewed as part of "entire compensation" to which statute referred); *Miller*, 266 U.S. at 250, 45 S.Ct. at 76 (contract suit under Trading With the Enemy Act); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 302, 304–06, 43 S.Ct. 354, 354–57, 67 L.Ed. 664 (1923) (suit for taking of property under the Lever Act; interest viewed as part of "just compensation" to which state referred); *Billings v. United States*, 232 U.S. 261, 284–88, 34 S.Ct. 421, 425–27, 58 L.Ed. 596 (1914) (suit to recover federal excise taxes paid)).

Since the award of prejudgment interest is soundly within this court's discretion, given the absence of relevant language in the Warsaw Convention, the next step in this case is to determine whether or not prejudgment interest is consistent with the framers' intent. The Second Circuit in *O'Rourke* relied on the nature and purpose of the Warsaw Convention and the specific monetary cap of the Montreal Agreement to determine that an award for prejudgment interest is not available in cases under the Warsaw Convention where there is no finding of "wilful misconduct." At issue in this case is whether an award of prejudgment interest is consistent with the nature and purpose of the Warsaw Convention in cases where there has been a finding of "wilful misconduct" and the monetary cap of the Montreal Agreement is inapplicable.

■ Damage awards under the Warsaw Convention serve a compensatory purpose. In considering the issue of punitive damages, the Second Circuit in *In re Air Disaster at Lockerbie, Scotland* 928 F.2d 1267, 1281 (2d Cir.), *cert. denied, Rein v. Pan American World Airways, Inc.,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991) noted that the Warsaw Convention provides for compensatory damages only. See also *Chendrimada v. Air-India*, 802 F.Supp. 1089, 1091 (S.D.N.Y.1992). The $75,000 limit of the Montreal Agreement is a departure from the full compensatory nature of tort recovery, generally. See *In re Inflight Explosion on Trans World Airlines, Inc.*, 778 F.Supp. at 631. The express removal of the $75,000 limitation in the Montreal Agreement indicates an intent to fully compensate victims where there has been a finding of "wilful misconduct." See *Inflight Explosion*, 778 F.Supp. at 641.

■ Given the compensatory purpose of the Warsaw Convention, especially in the case at hand where there has been a finding of "wilful misconduct," and given the nine years that have past between the accident and the judgment, this court concludes that an award for prejudgment interest is appropriate in this case.

Plaintiffs in this case recovered damages for past lost support and lost inheritance. Plaintiffs recovered for the following nonpecuniary losses: past and future mental injury; past and future loss of love, affection and companionship; and decedent's conscious pain and suffering.[8]

---

8. Specifically, the jury awarded Muriel Mahalek, in her individual capacity, the following:

1. $80,000 for past mental injury resulting from decedent's death;

Where the cap of the Montreal Agreement is removed due to the defendant's "wilful misconduct," the Warsaw Convention provides for the full compensation of the plaintiffs. Full compensation includes awards for pecuniary as well as non-pecuniary losses. Plaintiffs, therefore, are entitled to prejudgment interest for both pecuniary losses and non-pecuniary losses. *See also Saavedra* at 3 (considering damages available under the facts of this case and allowing prejudgment interest on past mental anguish, grief, sorrow, pre-death pain and suffering and loss of support).

### D. CALCULATION OF PREJUDGMENT INTEREST

 The calculation of prejudgment interest is a discretionary matter for the district court. *U.S. v. Seaboard Surety Co.*, 817 F.2d 956, 966 (2nd Cir.1987) (The calculation of prejudgment interest is "committed to the discretion of the district court"). *See also Orshan v. Macchiarola*, 629 F.Supp. 1014, 1017 (E.D.N.Y.1986) ("In federal question cases, absent statutory directive, the rate of prejudgment interest is left to the court's discretion").

> 2. $2,000 a year for 8 years ($16,000) for future mental injury;
> 3. $20,000 for past loss of love, affection and companionship; and
> 4. $1,000 a year for 8 years ($8,000) for future loss of love, affection and companionship.

The jury awarded Marjorie Zicherman, in her individual capacity, the following:

> 1. $5,000 for past lost support;
> 2. $45,000 for past mental injury resulting from decedent's death;
> 3. $1,000 a year for 20 years ($20,000) for future mental injury;
> 4. $50,000 for past loss of love, affection and companionship;
> 5. $1,000 a year for 20 years ($20,000) for future loss of love, affection and companionship;
> 6. $11,000 for lost inheritance.

The jury awarded Marjorie Zicherman, in her capacity as executrix of decedent's estate, $100,000 for decedent's conscious pain and suffering.

9. Title 28 U.S.C. § 1961, as amended, provides for the calculation of the rate of interest applicable to judgments in civil cases.

The calculation of prejudgment interest in civil cases in federal courts is, however, discussed in

Pursuant to an agreement between the parties, the discounted interest rate will be 2%. *See* Trial Transcript pp 427–30.

Prejudgment interest in this case will be calculated according to the formula used by the Supreme Court in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983): the entire award discounted back to the date of the accident, and prejudgment interest being awarded on that amount. *See Taliercio v. Compania Empressa Lineas Argentina*, 761 F.2d 126, 129 (2d Cir.1985) ("when trial courts in this Circuit discount damages to present value, we believe it would be preferable to calculate interest in accordance with the *Pfeifer* formula").

The prejudgment rate of interest in this case will be the average of the prime interest rate from the date of the accident to the date of judgment.[9]

### III. CONCLUSION

For the foregoing reasons, plaintiffs in this case are entitled to prejudgment interest on damages remedying both their pecuniary and non-pecuniary losses. Prejudgment interest

the legislative history of the amendment of 28 U.S.C. § 1961 (1976), *as amended by* Act of April 2, 1982, Pub.L. No. 97–164, section 302(a), 1982 U.S.Code Cong. & Ad.News (No. 2, April 1982) (96 Stat.) 55. The Senate Judiciary Committee's report on bill S. 1700 states:

> Under current law, the interest rate on judgments in the Federal courts is based on varying State laws and frequently falls below the current cost of money. Part B of title III sets a realistic and nationally uniform rate of interest on judgments in the Federal courts that would be keyed to the prime interest rate as determined by the Internal Revenue Service....
>
> There are presently no generally applicable guidelines concerning the award of prejudgment interest in Federal courts. Yet such interest may be essential to compensate the plaintiff or to avoid unjust enrichment of the defendant.... The bill provides that, where a defendant knew of his liability, interest be awarded for the prejudgment period at a rate that is keyed to the prime interest rate, where this is necessary to compensate the plaintiff. The imposition of such interest would be left to the discretion of the district judge in each case.

S.Rep. No. 275, *reprinted in* 1982 U.S.Code Cong. & Ad.News (No. 2, April 1982) at 11, 21–22.

will be calculated according to the *Pfeifer* formula at the average prime interest rate from the date of the accident to the date of judgment.