**UNITED STATES of America,**

v.

**Federico GIOVANELLI, a/k/a "Fritzy," Steven Maltese, and Carmine Gualtiere, a/k/a "Buddy".**

**No. 88 Cr. 954 (CBM).**

United States District Court, S.D. New York.

Nov. 30, 1992.

7. Thus, Schoeller's reliance on *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 47 (2d Cir.1984) is misplaced.

Tai Pak, New York City, for U.S.

Vivian Shevitz, New York City, for Giovanelli.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### The Controversy

Federico Giovanelli seeks, under Fed. R.Crim.Pro. 41(e), the return of certain moneys, $471,600, that were seized from safe deposit boxes by the United States, contending that there was no proper forfeiture, and that the applicable statute of limitations (five years) bars their forfeiture at the present time. The initial question before us is whether the court that rendered a criminal judgment against defendant has jurisdiction to entertain that criminal defendant's motion for return of property seized when that property was seized and forfeited in a default action in another district, where the defendant claims that the default judgment in the other district was accomplished without proper notice to him. This court finds that we have jurisdiction but that even accepting Giovanelli's contention that the notice to him was inadequate at the time of the forfeiture proceeding, equitable bars prevent him from recovering the funds seized.

## I. BACKGROUND

On December 9, 1986, $471,600 was seized from Giovanelli's safe deposit boxes (Government's Declaration in Opposition, ¶ 4). In 1987, a forfeiture action was filed in the Eastern District of New York before District Court Judge Constantino. Notice to defendant of the forfeiture action was

published in the New York Post on February 8, 1988 (Government's Declaration in Opposition, ¶ 8 and Ex. 5). Notice was also sent, on January 28, 1988, according to the Government, "by certified mail, return receipt requested, to the defendant Federico Giovanelli, who was the only known interested party to the forfeiture action.... The notice was sent to the defendant who was then incarcerated in a New York City detention facility [Rikers] on 1818 Hazen Street, Elmhurst, New York 11370" (Government's Declaration in Opposition to Rule 41(e) Motion, ¶ 7). The Government included in its opposition to the motion a copy of the certified mail receipt as Ex. 4 in its Declaration in Opposition. On March 7, 1988, a decree of forfeiture was filed with the clerk of the Eastern District (Government's Declaration in Opposition, ¶ 10).

Movant contends not only that he never received such notice, but also that the Government should have known that he would not receive it, since at the time the notice was sent he was not incarcerated at Rikers but had been released instead. Movant points to the Government's own Ex. 4, a photocopy of the certified mail notification, which is marked "Return to Sender: Can't Locate in System." This, movant contends, indicates that notice was inadequate.

Movant insists that he was completely unaware of the forfeiture action in the Eastern District until the Government's Declaration of Opposition made reference to it. Attached to movant's Reply as Ex. A, Giovanelli's Department of Correction Certificates, and they indicate that Giovanelli was not at Rikers when notice of the forfeiture action was sent.

## II. THIS COURT'S CAPACITY TO HEAR THE CLAIM PRESENTED

### A. The Propriety of Using Rule 41(e) to Recover the Funds

█ It appears that until the instant motion, the Government was unaware of the alleged failure to reach movant. It therefore raises other possible bars to movant's recovery. First, it claims that a Rule 41(e) motion is an inappropriate vehicle for the relief sought. This contention is incorrect.

The government, in its Surreply, cites a very recent case, *Onwubiko v. U.S.*, 969 F.2d 1392 (2d Cir.1992 (July 15)) for the proposition that Rule 41(e) is not the preferred mechanism for challenging a forfeiture action. Instead, they contend, Giovanelli should issue his challenge in the forfeiture action.

In *Onwubiko*, the court said that "[w]here criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." 969 F.2d at 1397. Another recent case, *Mora v. United States*, 955 F.2d 156, 158 (2d Cir.1992) is cited in *Onwubiko* as additional support for the proposition that a district court has the authority to consider a rule 41(e) motion as a post-conviction return of property motion. We therefore hold that movant's use of Rule 41(e) is not a fatal flaw.

### B. Jurisdiction of this Issue in the Southern District of New York

█ The Government declares that even allowing that a Rule 41(e) action is permissible, that this court lacks jurisdiction over the claim. However, case law clearly states that we have equitable jurisdiction over this motion, in addition to the fact that it is styled as a rule 41(e) motion is no bar to recovery.

Not only does *Mora v. United States*, 955 F.2d 156, 158 (2d Cir.1992) support the proposition that a district court has the authority to consider a rule 41(e) motion as a post-conviction return of property motion; it also supports the position that the district court where the criminal action took place has jurisdiction over movant's motion, as equitable jurisdiction ancillary to jurisdiction over the criminal case. 955 F.2d at 158. See also *Soviero v. U.S.*, 967 F.2d 791, 792 (2d Cir.1992).

In addition, the Second Circuit decided, in *U.S. v. One 1987 Wrangler Jeep*, 972 F.2d 472 (2d Cir.1992 (Aug. 6)) that the district court loses jurisdiction during the pendency of the forfeiture proceeding. 972 F.2d at 479. Here, however, since the proceeding is long over, this court does not relinquish

its equitable jurisdiction over this motion as pursuant to its ancillary jurisdiction over the criminal matter. The cases that the government cites in its Surreply at 4–6 stand for the position that during a forfeiture action's pendency, there can be no collateral attack on the forfeiture, *not that* once this action is complete, a movant cannot challenge the forfeiture in the district court of the criminal trial. This court therefore clearly has equitable jurisdiction over movant's instant claim.

▇▇▇ Principles of comity between federal courts bar simultaneous litigation of the same matter in more than one federal district court. When there are two lawsuits filed concurrently in a matter, the first one filed determines the locus of jurisdiction. *First City Nat. Bank & Trust v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989); see also *Employer's Ins. of Wausau v. Prudential Ins.,* 763 F.Supp. 46, 38 (S.D.N.Y.1991). Typically, this doctrine has been applied in situations where two active litigations are ongoing, not, as here, where one suit seeks to relitigate a matter decided years previously by a federal district court in another jurisdiction.

As between federal courts, the "doctrine of comity *permits* a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. Hence, courts follow a 'first to file' rule that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground,* 765 F.2d 119, 120 (8th Cir.1985) (emphasis supplied). However, no case law can be found that mandates that where, as here, a default action against a movant is filed and decided in one federal court, another federal court *must* decline jurisdiction where that second court has jurisdiction over the criminal prosecution of the movant. Here, given that the Southern District was the jurisdiction that held the criminal proceeding, it has equitable jurisdiction to hear the instant claim as ancillary to its jurisdiction over the criminal trial of Giovanelli.

One of the major justifications for the doctrine of the "first to file" rule is the avoidance of concurrent actions that would waste scarce judicial resources. Since there is no ongoing action in the Eastern District that concern is not implicated here. Secondly, since this court heard the criminal complaint against movant it has a familiarity with the facts of the case, a familiarity that would be lost were this case transferred to the Eastern District. This transfer would require the outlay of additional judicial resources, and thus the concerns that motivate the application of the "first to file" rule in cases of concurrent litigation militate, in the instant controversy, for this court's retention of jurisdiction over Giovanelli's Rule 41(e) motion for return of the property seized.

## III. THE ADEQUACY OF THE NOTICE PROVIDED

▇▇▇ The question Giovanelli presents is whether the notice used was reasonably calculated to inform Giovanelli of the proceedings. *Weigner v. New York,* 852 F.2d 646, 649 (2d Cir.1988), cert. den. 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). In *Weigner,* the court noted that certified mail would be an advantageous form of notice since the "signed receipt would provide virtually conclusive evidence that the notice was received." 852 F.2d at 650. In the instant case, certified mail indicated that the notice was not received. Given the fact that the certified mail was stamped "Return to Sender: Cannot Locate in System," it would seem that notice by publication would be insufficient. Additionally, the publication in the New York Post only ran once, while the applicable statute calls for publication three times. See Government's Reply Memorandum of Law, p. 9, note 4. The Government's own Memorandum of Law in Opposition, at p. 9, cites cases that support movant's contention that notice was inadequate. *Winters v. Working,* 510 F.Supp. 14, 17 (W.D.Tex. 1980), is cited for the proposition that where government does not mail notice to owner of car it seeks to forfeit but only publishes notice, such notice is inadequate. *United States v. Mosquera,* 845 F.2d 1122

(1st Cir.1988), is cited for the proposition that "where Government mailed notice of forfeiture proceeding to claimant's obsolete home address rather than his place of incarceration, notice was inadequate."

The court holds, therefore, that the notice given by the Government was inadequate. The analysis set out in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) governs: the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In *Mullane*, the publication notice was deemed inadequate because it did "not even name those whose attention it is supposed to attract." In the instant case, the publication in the Post did not name Giovanelli.

In *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), the State of Illinois instituted forfeiture actions against appellant, who then sought to recover the assets seized. Even though the challenger was incarcerated in the State's own facilities at the time, the State "mailed notice of the pending forfeiture proceedings, not to the jail facility, but to appellant's home address." 409 U.S. at 39, 93 S.Ct. at 31, 34 L.Ed.2d at 48. The notice was not received. The Court found this notice inadequate since "it cannot be said that the State made any effort to provide notice which was "reasonably calculated" to apprise appellant of the pendency of the forfeiture proceedings." 409 U.S. at 40, 93 S.Ct. at 31–32, 34 L.Ed.2d at 49. It would appear that the same analysis could be applied in this case, except in the instant matter notice was sent to the jail while Giovanelli was at home.

In *Jaekel v. U.S.*, 304 F.Supp. 993 (S.D.N.Y.1969), the court found a forfeiture action against plaintiff's car invalid. In that case, there was publication notice, and plaintiff was orally told when her car was seized to "see a lawyer." The court held that where "the defendants had plaintiff's name and address and where giving personal notice of the forfeiture proceeding

would have cause defendants no additional inconvenience, the court finds that the notice to plaintiff was not sufficient and that the forfeiture proceeding was void as it deprived plaintiff of her property without the due process of law required by the Fifth Amendment." 304 F.Supp. at 999. *Jaekel* held also that notice via publication alone is not enough with respect to someone whose name and address are easily known or readily ascertainable. See also *Winters v. Working*, 510 F.Supp. 14, 17 (W.D.Tex.1980). Giovanelli's name and address were known; it would have been quite easy for notice to be sent to his home address. Therefore, this court finds that the notice sent was inadequate to inform Giovanelli of the proceedings.

## IV. EQUITABLE BARS TO GIOVANELLI'S RECOVERY

### A. Laches

The Government argues that even if the notice sent to Rikers did not reach movant, that there was actual notice provided within the five year limitation period, and that Giovanelli purposefully sat on his rights and thus is barred by the doctrine of laches from asserting his claim now. A veritable avalanche of evidence proves that Giovanelli was more than aware of the seizure, and that he did not challenge the forfeiture because he did not want to be connected to funds whose existence he could not explain without criminally implicating himself.

Giovanelli's attorney contended at oral argument of this motion that Giovanelli was never aware of the seizure of these funds. However, not only was movant so aware, movant had attempted to bar the introduction of the moneys seized as evidence at the trial, a request denied by this court in *U.S. v. Giovanelli*, 747 F.Supp. 891 (S.D.N.Y.1989). Ms. Shevitz, the attorney arguing the instant motion, appeared in that instance as well, arguing for suppression of the moneys found in the safe deposit boxes from evidence. Indeed, the admission of the cash from the boxes was heatedly contested by movant.

Giovanelli was aware, at the least, that the government thought that there had been a forfeiture order. At trial, the Federal Bureau of Investigations Agent who actually seized the moneys, Agent Beauboin, testified that the moneys were forfeited to the Government, testimony that movant, in his initial Notice of Motion of April 1, 1992, admits hearing. Notice of Motion for Return of Seized Property, ¶ 3.

The testimony of Agent Beauboin was short, and consisted of testimony about the search of Giovanelli's home, the items found there, and the $471,600 in cash found in safe deposit boxes opened by keys found in the search of Giovanelli's home. Movant's attorney, Mr. Hocheiser, opened the cross-examination of the witness as follows:

Q: That $371,000 plus approximately $100,000, is that still in existence in the form of currency?

A: I don't know what form it is in at this moment. It was forfeited to the United States Government. I do know that.

Q: So you don't know whether it was deposited in a bank account and now exists as a balance or an account as opposed to a pile of cash; is that right?

A: At this time I don't know. I know it has been forfeited.

(Transcript of the criminal trial, 1364–1365). That was not the only mention that the moneys were forfeited. Several minutes later, on redirect, the funds were discussed, and the fact that they were forfeited was mentioned four times:

Q: (by Mr. Hoffinger, AUSA) Now, the $471,000 that you found in safe deposit boxes 560, 561, and 701, you said that money was forfeited?

A: Yes, it was.

Q: And was that forfeited pursuant to law?

A: Yes. I don't know the specifics—

Q: But it was forfeited pursuant to law?

A: Yes.

Q: And it went back into the United States Treasury, essentially; is that right?

A: Essentially that's what happens. (Tr. 1377, lines 9–18).

Giovanelli cannot now feign surprise at the fact that there was a forfeiture order entered in the Eastern District, given the fact that for three years movant has had actual notice that the Government believes the money to have been forfeited.

■ An equitable claim is barred by the doctrine of laches where there is "(1) proof of delay in asserting a claim despite opportunity to do so; (2) lack of knowledge on defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowing of the claim." *Rapf v. Suffolk County*, 755 F.2d 282, 292 (2d Cir.1985). In the instant controversy, Giovanelli has delayed his claim although he has had sufficient opportunity to present it earlier; the Government had no knowledge that such a claim would be forthcoming; and because of the passage of time, the Government is clearly prejudiced, both in its ability to defend the instant motion due to the time lapse as well as the lapse of the statute of limitations for the underlying forfeiture.

Giovanelli cannot claim justifiable ignorance. While laches is no bar when the movant's delay is excusable because of justifiable ignorance of the facts comprising the cause of action, here Giovanelli is barred because his own lack of diligence in asserting his claim cannot be justified. *Southside Fair Housing Com. v. New York*, 928 F.2d 1336, 1354 (2d Cir.1991). Due to movant's constructive or actual knowledge of the facts affecting his rights, the lack of a satisfactory reason for his delay bars his recovery under laches. *Grant Airmass v. Gaymar Ind.*, 645 F.Supp. 1507, 1515 (S.D.N.Y.1986)

### B. Dirty Hands

■ Giovanelli is also prevented by the doctrine of in pari delicto, unclean hands, from recovering the funds seized. At his sentencing, Giovanelli was subject to fines totalling $1,250,000. However, because there was no evidence at time of sentencing that defendant had a lot of cash, the

court imposed a rather small monetary penalty of only $25,000, believing, as Giovanelli and the presentence report indicated, that he possessed very little money.

Giovanelli was more than eager to stay silent on his claim to the moneys in controversy when it looked as if a judicial fine would deprive him of them. Indeed, his attorney at the original sentencing of November 16, 1989 argued for a small fine, noting that the government seized the funds that Giovanelli had secreted in the safe deposit boxes (Transcript of the Sentencing from November 16, 1989, at 21). The court specifically noted the seizure and forfeiture of the funds in controversy as a reason for assessing a particularly picayune fine of $25,000 (November 16, 1989 Transcript at 32).

In preparation for his original sentencing of November, 1989, Giovanelli submitted a net worth statement indicating that at best he had around $17,600 worth of assets, assets that he claimed were offset by debts owed. Presentence Report of October 23, 1989, at 8.

Now, after the levying of the fine, movant's unclean hands bar the recovery he seeks. The doctrine of unclean hands serves "to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity, as where an injunction would aid in consummating a crime." *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir.1985). This court found at trial that the moneys in question here were evidence of Giovanelli's participation in an illegal gambling scheme. To allow his recovery here, after Giovanelli at the fine stage declined to assert his rights, would aid in consummating the crimes for which he was charged and found guilty. Thus, his motion for return of property seized is denied.