**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Federico GIOVANELLI a/k/a Fritzy,
Defendant–Appellant.**

**No. 1320, Docket 92–1737.**

United States Court of Appeals,
Second Circuit.

Argued April 20, 1993.

Decided July 6, 1993.

Tai H. Park, Asst. U.S. Atty., S.D.N.Y. (Roger S. Hayes, U.S. Atty. and Gabriel W. Gorenstein, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Vivian Shevitz, New York City (Lawrence Hochheiser and Georgia J. Hinde, on the brief), for defendant-appellant.

Before: PRATT and JACOBS, Circuit Judges, and KNAPP, Senior District Judge.*

WHITMAN KNAPP, Senior District Judge:

Federico Giovanelli appeals from the denial of his motion pursuant to Fed.R.Crim.P. 41(e) [1] for the return of $471,600 seized from safe deposit boxes by federal agents. We reverse and remand to the District Court with instructions to grant the motion.·

## BACKGROUND

On December 9, 1986 Special Agents from the Federal Bureau of Investigation acting pursuant to lawful search warrants seized $471,600 in United States currency from five safe deposit boxes belonging to defendant at the Cross County Federal Savings and Loan Association at 80–11 Eliot Avenue, Middle Village, Queens, New York in the Eastern District of New York. Subsequently, on October 30, 1987 the United States Attorney for the Eastern District of New York filed an *in rem* complaint against the currency seeking its forfeiture to the United States, and a warrant for its arrest was issued that same day. The Marshal of the Eastern District seized the money pursuant to such warrant on November 12, 1987. On January 28, 1988 the Marshal sent a Notice of Attachment by registered mail addressed to defendant at the New York City prison at Rikers Island, even though defendant was then living at home on bail between two state trials for a murder and an attempted murder that the government subsequently listed in the indictment as racketeering acts numbers 3 and 4. The registered letter was returned to the Marshal stamped "Return to Sender," with an additional hand-written note stating "cannot locate in system." On February 8, 1988 an advertisement referring to the forfeiture action was published in the New York Post. On March 7, after defendant had failed to appear at a February 28 conference before Judge Mark A. Costantino regarding the forfeiture action, the government submitted and Judge Costantino signed a Decree of Forfeiture.

On February 28, 1989, nearly one year after the Decree of Forfeiture had been granted, a grand jury returned a superseding indictment charging defendant with a variety of gambling related criminal activities, including a violation of the RICO statute, 18 U.S.C. § 1962(c) and (d). At the trial, FBI Special Agent Charles Beauboin was briefly

---

* Honorable Whitman Knapp, Senior Judge for the Southern District of New York, sitting by designation.

1. That rule reads in relevant part as follows: A person aggrieved by ... the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion.

examined about the seizure of the currency as follows:

Q: [by defense counsel] That $371,000 plus approximately $100,000, is that still in existence in the form of currency?

A: I don't know what form it is in at this moment. It was forfeited to the United States government. I do know that.

Q: So you don't know whether it was deposited in a bank account and now exists as a balance or an account as opposed to a pile of cash; is that right?

A: At this time I don't know. I know it has been forfeited.

And (emphasis supplied):

Q: [by prosecutor] Now, the $471,000 that you found in safe deposit boxes 560, 561, and 701, you said that money was forfeited?

A: Yes, it was.

Q: And was that forfeited pursuant to law?

A: Yes. *I don't know the specifics—*

Q: But it was forfeited pursuant to law?

A: Yes.

Q: And it went back into the United States Treasury, essentially, is that right?

A: Essentially that's what happens.

Although no objection was made to any of these questions, none of them was relevant to anything then being considered by the court or by the jury.

On July 30, 1989, defendant was convicted of, *inter alia,* the RICO charge, and was sentenced on November 16, 1989. At the time of sentencing the district court "specifically noted the seizure and forfeiture of the funds in controversy as a reason for assessing a particularly picayune fine of $25,000."

On April 9, 1992, several months after expiration of the five-year statute of limitations within which the government could institute forfeiture proceedings, defendant filed this Rule 41(e) motion for the return of his property. The government—after having obtained an extension of time in order "to retrieve and analyze all the relevant records from the archives of the F.B.I. and the District Court for the Eastern District of New York, where an *in rem* forfeiture proceeding apparently was filed"—contested the motion on two grounds: (1) that defendant filed his motion in the wrong court, as Rule 41(e) permits "[a] person aggrieved by ... the deprivation of property [to] move the district court for the district in which the property was seized for return of the property"; and (2) that defendant had ample opportunity to contest the forfeiture in the context of the forfeiture hearing itself, but did not.

The District Court, 807 F.Supp. 351, having asserted that a "district court where the criminal action took place has jurisdiction over movant's motion, as equitable jurisdiction to hear the instant claim as ancillary to its jurisdiction over the criminal trial," held that the government's notice of the forfeiture action was inadequate because the Notice of Attachment plainly did not reach defendant, and that the single published notice did not satisfy the statutory requirement of three publications. However, it held that two equitable considerations prevented defendant's succeeding on his motion. First, it found that Agent Beauboin's testimony at trial concerning the money gave defendant "actual notice that the government believes the money to have been forfeited" but that defendant then "delayed his claim although he has had sufficient opportunity to present it earlier," to the detriment of the government's forfeiture action. Additionally, it found that the doctrine of unclean hands barred defendant from claiming money in 1992 to which he made no claim at sentencing in 1989 when a modest fine of $25,000 based on his stated net worth of only $17,600 was imposed.

## DISCUSSION

■ As an initial matter, we agree with the District Court that it had jurisdiction to hear the Rule 41(e) motion for return of property despite its being brought on after the conclusion of criminal proceedings in a different district than that in which the property was seized. Indeed, in *Soviero v. United States,* 967 F.2d 791, 792–93 (2d Cir.1992) we observed:

We have held that a district court where a defendant is tried has ancillary jurisdiction

to decide a defendant's post-trial motion for the return of seized property. *See Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992). Where criminal proceedings are no longer pending against the defendant such motion is treated as a civil equitable proceeding even if styled as being pursuant to Fed.R.Crim.P. 41(e). *United States v. Martinson,* 809 F.2d 1364, 1367 (9th Cir.1987).

*See also Onwubiko v. United States* 969 F.2d 1392, 1397 (2d Cir.1992) ("Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint.").

Such ancillary equitable jurisdiction is especially appropriate on the facts here before us, in light of the defective nature of the forfeiture proceeding attempted by the government in the Eastern District. Indeed, we find the Eastern District proceeding to have been a nullity in view of the government's utter failure to make the slightest effort to notify defendant of the forfeiture action, although it was probably aware—or could easily have ascertained once the registered letter containing the Notice of Attachment was returned marked "cannot locate in system"— that he was living in his own home; and in view of the government's obvious knowledge of the inadequacy of a single publication when the statute required three.

 Turning to the equitable considerations upon which the district court based its denial of the motion, we cannot agree with it that the defendant was in some way estopped from making his Rule 41(e) motion by his having withheld it until the statute of limitations had run against the government despite his "actual notice" of the government's *belief* that it had instituted forfeiture proceedings. Assuming, arguendo, that agent Beauboin's irrelevant testimony about his personal belief that some sort of forfeiture proceedings had been undertaken would have put defendant on notice that the government shared that belief, such notice would have availed the government nothing. The forfeiture statutes give the government vast and important powers, but they must be exercised in the precise manner the statutes provide. *See, e.g., United States v. One Ford Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939) ("Forfeitures are not favored; they should be enforced only when within both the letter and spirit of the law"). The statutes impose no duty on a defendant to prevent the government from losing its rights through carelessness.

Nor can the defendant be faulted for his conduct at the time of sentencing, when the District Court indicated that it was accepting his net worth statement of $17,600 in setting the modest $25,000 fine. There was then more than two years remaining before the statute of limitations would run against the government. There is nothing in the record to suggest that defendant or his counsel (who concededly had no information about the aborted Eastern District proceeding) did not expect the government to follow its usual practice of instituting appropriate forfeiture proceedings, which would have made accurate defendant's net worth estimate.

Accordingly, we reverse the district court's denial of defendant's claim for return of seized property. Ordinarily, we would remand the case to the district court for further proceedings, including proper pleadings and adjudication of defendant's entitlement to the seized funds. However, the government has not challenged defendant's assertion that the funds in question belonged to him and had even been duly reported on his income tax return. Defendant's claim for return of the funds recites specifically that it was made:

> on the ground that those funds, which Mr. Giovanelli reported as his income on U.S. Income Tax returns for 1986, belongs to Mr. Giovanelli and was not returned to Mr. Giovanelli by the federal prosecutors, *who never instituted legal forfeiture proceedings directed to those funds.*

(Emphasis added). The government's sole challenge to defendant's claim was to the italicized portion of the above quotation, of which challenge this opinion has conclusively disposed. No other defenses or objections to defendant's claim for the funds have been raised by the Government either in the district court or on appeal. The record on appeal thus permits us to reach the merits of

Giovanelli's claim and award him return of the seized funds.

## CONCLUSION

The judgment of the district court is reversed and this action remanded with instructions to enter judgment in favor of Giovanelli.