**UNITED STATES of America**

v.

**Federico GIOVANELLI, a/k/a "Fritzy".**

**No. S 88 Cr. 954 (CBM).**

United States District Court,
S.D. New York.

Jan. 28, 1994.

---

## OPINION

MOTLEY, District Judge.

Petitioner, having made a successful appeal from an adverse decision of this court regarding his motion for return of his seized currency under Fed.R.Crim.P. 41(e), now applies for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 and prejudgment interest. For the reasons stated below, petitioner's motion for attorneys fees and prejudgment interest is granted.

## BACKGROUND

On December 9, 1986, FBI Special Agents seized $471,600 in United States currency from safe deposit boxes belonging to Petitioner Federico Giovanelli. The United States Attorney in the Eastern District of New York thereafter filed an *in rem* complaint against the currency seeking its forfeiture to the United States. The United States Marshall sent a notice of attachment to Giovanelli at Rikers Island, where he had been incarcerated, but had since been freed on bail between two state court trials. Unable to locate petitioner, the letter notice was returned to the Marshall and the United States Attorney then published a single notice in the New York Post citing the pendency of the forfeiture action.

After petitioner failed to respond, United States District Judge Mark A. Costantino of the Eastern District of New York signed a Decree of Forfeiture submitted by the Government on February 28, 1988. *See United States v. Federico Giovanelli a/k/a "Fritzy,"* 998 F.2d 116, 117 (2d Cir.1993) [hereinafter *Giovanelli II* ].

Exactly one year later, petitioner was indicted for a variety of gambling related activities in this court. During the subsequent trial, defense counsel questioned FBI Special Agent C. Beaboin about the status of the seized currency. He testified that the money had been forfeited to the Government "pursuant to the law." *Giovanelli II,* 998 F.2d at 118. Petitioner was convicted and is currently serving his sentence. Additionally, because this court, the Government and petitioner himself believed that his safety

deposit funds had been forfeited, he was fined a modest sum of $25,000 by this court.

In April 1992, three years after his conviction and several months after the statute of limitations that would have allowed the Government to institute proper forfeiture proceedings had expired, petitioner filed a Rule 41(e) motion to recover his property. In an earlier decision, this court ruled that it had equitable jurisdiction to hear the motion even though the forfeiture proceeding occurred in the Eastern District.[1] This court also ruled that although the Government's forfeiture was defective, petitioner was not entitled to a return of his money because: (1) Agent Beauboin's testimony gave him actual notice that his property had been forfeited; and (2) his decision to wait three years to file his motion unfairly prejudiced the Government's ability to institute new forfeiture proceedings because the statute of limitations had lapsed. *Giovanelli I*, 807 F.Supp. at 354–56.

On appeal, the Second Circuit reversed this court's decision, directing that it "enter judgment in favor of Giovanelli" and "award him return of the seized funds." *Giovanelli II*, 998 F.2d at 119. Generally, it agreed that this court had equitable jurisdiction to hear the motion but found the Government's notice of the impending forfeiture clearly defective under the statute. It further held that the forfeiture statutes must be strictly followed and "impose no duty on a defendant to prevent the government [sic] from losing its rights through carelessness." *Id.* at 119.

Petitioner has now moved to recover attorneys fees under the Equal Access to Justice Act ("EAJA"), claiming that the Government's litigation position was unreasonable. 28 U.S.C. § 2412 (1993). Petitioner has also requested prejudgment interest in an amount exceeding $400,000, computed by using the IRS underpayment rate. After carefully considering established precedent in the Second Circuit, this court finds that petitioner is entitled to attorneys fees and prejudgment interest.

1. More specifically, this court found that "the instant claim [was] ancillary to [it's] jurisdiction over the criminal trial." *United States v. Giova-*

## DISCUSSION

### Attorneys Fees

■ The EAJA provides in pertinent part: "a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... *unless* the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1993) (emphasis supplied). Thus, a prevailing party may recover an award of attorneys fees if the Government was not "substantially justified" in its administrative and litigation positions. *Federal Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir.1993); *Soto–Valentin v. Heckler*, 619 F.Supp. 627, 630 (D.C.N.Y.1985).

It is well-established that a litigation position advanced by the Government will be considered substantially justified if it is reasonable, regardless of whether it prevails. For instance, in *Pierce v. Underwood*, the Supreme Court held that "substantially justified" *does not* mean "justified to a high degree," but "justified to a degree that could satisfy a reasonable person." 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988). Further, while some courts have held that the reversal of a lower court decision upholding the Government's position establishes prima facie evidence that it was not substantially justified, this does not automatically mandate an award of attorneys fees under the EAJA. Instead, it merely shifts the burden to the Government to prove that its position was reasonable. *See Scavone v. Sullivan*, 780 F.Supp. 976, 977 (E.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.1992) (reversal of [an administrative agency decision] results in a prima facie showing that the decision was not substantially justified). *But see, Cohen v. Brown*, No. 83 Civ. 3963, 1987 WL 7737, *2–3 (S.D.N.Y. March 4, 1987) (Motley, J.) (the legislative history of the [EAJA] indicates that the substantial justification standard should not raise a presumption that the Government's position was not substantially

*nelli*, 807 F.Supp. 351 (S.D.N.Y.1992) [hereinafter *Giovanelli I*], *rev'd*, *United States v. Giovanelli, a/k/a "Fritzy,"* 998 F.2d 116 (2d Cir.1993).

justified simply because it lost the case). Thus, the EAJA should not be regarded as an "automatic fee-shifting device" that mechanically shifts the burden of paying attorneys fees whenever a party prevails. *Political Contributions Data,* 995 F.2d at 386.

It is undisputed that petitioner is a "prevailing party" under the EAJA. Moreover, this court is compelled to find that the Government's position in this case was *not* substantially justified. While we agreed with the Government that petitioner Giovanelli was barred from recovering his money due to equitable considerations, we must look past its litigation position to the reasonableness of its actions at the time of the seizure. *Political Contributions Data,* 995 F.2d at 386.

It is increasingly evident that courts are alarmed by the Government's "virtually unchecked use of the civil forfeiture statutes, and the disregard for due process that is buried in those statues." *U.S. v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896, 905 (2d Cir.1992). For instance, in *U.S. v. James Daniel Good Real Property,* the Supreme Court held that prosecutors may not seize a defendant's home as property used to commit or facilitate a drug offense without first affording him prior notice and a hearing. —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). In reaching its decision, the Court found that where the Government "seized property not to preserve evidence of wrongdoing, but to assert ownership and control ...," established precedent required that the Government's action comply with the basic procedural requirements of prior notice and fair hearing contained in the Due Process Clauses of the Fifth and Fourteenth Amendments. At ——, 114 S.Ct. at 500.

In this case, the Second Circuit has held that the forfeiture statutes give the Government "vast and important powers, but they must be exercised in the precise manner the statutes provide." *Giovanelli,* 998 F.2d at 119 (quoting *United States v. One Ford Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864–65, 83 L.Ed. 1249 (1939)). Therefore, established caselaw requires strict compliance with the forfeiture statutes and provides little room for deviation.

This court is also guided by the recent decision in *Political Contributions Data,* which involved an enforcement lawsuit brought by the Federal Elections Commission ("FEC") seeking to enjoin Political Contributions Data, Inc. ("PCD"), a private company, from selling reports listing the contributors to federal election campaigns. The FEC, based upon its interpretation of 2 U.S.C. § 438, alleged that the sale of this information violated the statute that prohibited using such information for solicitation or for commercial purposes. After noting the lack of Congressional guidance on this question, the District Court granted the FEC's motion for summary judgment and PCD appealed. On appeal, the Second Circuit reversed the District Court decision, finding that "an analysis of legislative history established that the [FEC] had adopted an unreasonably restrictive interpretation of the provision in question and of its own corresponding regulation...." *Political Contributions Data,* 995 F.2d at 384.

After the reversal, PCD moved for attorneys fees under the EAJA. Following a careful analysis, the District Court concluded that:

> Given the conflict between the ... terms [of the Federal Elections Communications Act], the lack of congressional and judicial guidance, the ambiguous gap which the FEC was requested to fill, and that the legislative history only established [one specific exception], this Court finds that the FEC's position had a reasonable basis in law and was "substantially justified."

Thus, the District Court rejected PCD's application for attorneys fees. *Federal Election Comm'n v. Political Contributions Data, Inc.,* 807 F.Supp. 311, 318 (S.D.N.Y. 1992), *rev'd and remanded,* 995 F.2d 383 (2d Cir.1993).

PCD also appealed this decision to the Court of Appeals, which again reversed the District Court, deciding that if "a previous panel [of the Circuit Court] has ... found the [agency's] position to have been unreasonable in that it frustrated the intent of Congress and might jeopardize first amendment rights, the district court [is] ... bound by the panel's conclusions." 995 F.2d at 387.

Noting that the "previous [appellate] panel found the [FEC's] position unreasonable in light of the plain language and legislative history of the statute," *Id.* at 386, the Court determined that it was bound by the decision of the previous panel and PCD prevailed.

Although the Court of Appeals did not expressly declare the Government's position "unreasonable" in this case, it did not agree "that [petitioner] was in some way estopped from making his Rule 41(e) motion [by waiting] until the statute of limitations had run against the government [sic] despite his 'actual notice' of the government's [sic] *belief* that it had instituted forfeiture proceedings." *Giovanelli II,* 998 F.2d at 119. It further held that the forfeiture statute "imposes no duty on a defendant to prevent the government [sic] from losing its rights through carelessness." *Id.* at 119. Not unlike the Federal Elections Commission in *Political Contributions Data,* the Government's actions clearly violated both the "plain language and legislative history" of the forfeiture statute and Giovanelli simply cannot be penalized for allowing the statute of limitations to expire. Accordingly, this court is left to conclude that the Government's defective seizure, stemming from its "utter failure to provide adequate notice to the petitioner" was procedurally defective and rendered its position in this case not substantially justified. Thus, petitioner's motion for attorneys fees is granted.

### Prejudgment Interest

■ Petitioner further argues that he is entitled to prejudgment interest on the improperly seized funds. More specifically, petitioner requests that "interest be granted from the date of the seizure, and that interest ... be computed in at least the sum that the IRS will claim." Declaration of Vivian Shevitz, Esq. In Support Of Motion For Judgment And EAJA Fees, ¶ 2 ("Shevitz Decl."). To support his request, petitioner has submitted various tax assessments against the funds, which will be satisfied when the Government returns his money. Exhibit B to the Declaration of Donal Meyers In Support Of Motion For Judgment And EAJA Fees ("Meyers Decl.").

Using the IRS underpayment rates from the date of seizure on December 9, 1986 through September 30, 1993, petitioner claims that he is entitled to approximately $438,000 in prejudgment interest on the seized funds. Shevitz Decl. ¶ 2. Conversely, the Government argues that interest should be awarded as of December 9, 1991, or the date that the statute of limitations expired under the forfeiture statute. More specifically, the Government contends that since Giovanelli "inexcusably sat on his rights and now demands prejudgment interest for the period of delay, ... [this court should] deny [his] claim for prejudgment interest and award the interest only as of December 9, 1991." Letter Brief In Support of the Government's Opposition to Defendant's Motion for Interest and Attorney's Fees.

Where a federal statute specifically provides for prejudgment interest, that statute will govern. Absent a controlling federal statute, however, "it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be due." *West Virginia v. United States,* 479 U.S. 305, 308–09, 107 S.Ct. 702, 705, 93 L.Ed.2d 639, 644–45 (1987); *Wickham Contracting v. Local Union No. 3 IBEW,* 955 F.2d 831, 833 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992). Among the considerations affecting the Supreme Court's decisions to award prejudgment interest are: i) the need to fully compensate the wronged party for actual damages suffered; ii) considerations of fairness and the relative equities of the award; iii) the remedial purpose of the statute involved; and iv) such other general principles as are deemed relevant by the court. *Wickham,* 955 F.2d at 834 (citations omitted).

After considering the requirements of the forfeiture statute and the due process concerns involved, this court finds that petitioner is entitled to prejudgment interest on his improperly seized funds. Clearly, petitioner has suffered damages in this case, most notably the deprivation of his money and the income which it would have earned but for the Government's action. As the Second Cir-

cuit held in *Wickham,* "it is not an abuse of discretion for the district court to determine that prejudgment interest [is] necessary to compensate [petitioner] under [such] circumstances." 955 F.2d at 837. Likewise, a decision to award petitioner Giovanelli's request fully comports with the remedial nature of the Second Circuit's decision in this case. Accordingly, petitioner's motion for prejudgment interest is granted.

 Upon deciding that petitioner Giovanelli is entitled to prejudgment interest on his seized funds, it is now necessary to determine the interest rate to use to calculate his award. As this court has held on numerous occasions, prejudgment interest is not a penalty, but compensation to the injured party for the use of his or her money. *Zicherman v. Korean Air Lines,* 814 F.Supp. 605, 608 (S.D.N.Y.1993); *Danna v. New York Telephone Co.,* 755 F.Supp. 615, 617 (S.D.N.Y. 1991).

As we noted in *Zicherman,* there is no standard interest rate for determining prejudgment interest. 814 F.Supp. at 612. However, Congress has considered this issue as reflected in the legislative history of the amendment to 28 U.S.C. § 1961 (1976) wherein the Senate Judiciary Committee stated:

> There are presently no generally applicable guidelines concerning the award of prejudgment interest in Federal Courts. Yet such interest may be essential to compensate the plaintiff or to avoid unjust enrichment of the defendant.... The bill provides that, where a defendant knew of his liability, interest be awarded for the prejudgment period at a rate that is keyed to the prime interest rate, where this is necessary to compensate the plaintiff."

S.Rep. No. 275, *reprinted in* 1982 U.S.Code Cong. & Ad.News (No. 2, April 1982) at 11, 21–22.

Considering the compensatory nature of prejudgment interest, this court finds that the prime interest rate will reasonably compensate petitioner for the deprivations which he has suffered. Accordingly, the prejudgment interest rate will be the average prime interest rate from the date the funds were improperly seized in December 1986 until the date of judgment in this matter which was entered by the Court of Appeals in July 1993.

This court disagrees with the Government's argument that interest be computed as of December 9, 1991, or the date that the statute of limitations under the forfeiture statute expired. Even though the Government had five years following the seizure to remedy its violation, it does not follow that petitioner's "right only accrued" after the relevant statute of limitations expired. To the contrary, petitioner's right to recover his money accrued at the moment the funds were improperly seized on December 9, 1986. To decide otherwise would result in penalizing Giovanelli for the Government's nonfeasance, a position that the Court of Appeals expressly rejected in its earlier decision.

We further find that petitioner is entitled to post-judgment interest calculated in accordance with the provisions of 28 U.S.C. § 1961 (1993) to compensate him for any additional costs incurred in the period following the judgment rendered in July 1993.

### CONCLUSION

For the reasons discussed above, petitioner is entitled to attorneys fees under the Equal Access to Justice Act and prejudgment interest on his seized currency. Further, the prejudgment interest must be computed using the average prime interest rate for the period beginning December 1986 and ending in July 1993.