UNITED STATES of America,

v.

Maria PARLAVECCHIO.

No. 4:CR–00–312–03.

United States District Court,
M.D. Pennsylvania.

March 1, 2002.

Wayne P. Samuelson, Office of the U.S. Attorney, Williamsport, PA, for United States of America.

Eugene P. Tinari, Philadelphia, PA, for Maria Parlavecchio.

## ORDER

MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On December 13, 2000, a federal grand jury returned a 10–count superseding indictment charging John Alite, Antonino Parlavecchio and Maria Parlavecchio with, inter alia, conspiracy in violation of 18 U.S.C. § 371. On August 29, 2001, John Alite and Maria Parlavecchio pled guilty to count 6 of the superseding indictment and Antonino Parlavecchio, the husband of Maria Parlavecchio, pled guilty to Count 7 of the superseding indictment. Count 6 charged John Alite and Mrs. Parlavecchio with providing a prohibited object to an inmate, namely Mr. Parlavecchio at the Allenwood Federal Prison in violation of 18 U.S.C. § 1791(a)(1). Count 7 charged Mr. Parlavecchio with possession of a prohibit-

ed object in violation of 18 U.S.C. § 1791(a)(2).

On August 29, 2001, Mrs. Parlavecchio entered a plea of guilty to Count 6 of the superseding indictment. A presentence report was received by the court on November 23, 2001. No objections were filed to the presentence report. On December 3, 2001, Mrs. Parlavecchio was sentenced to a one-year term of probation. No appeal was filed by Mrs. Parlavecchio.

On February 1, 2002, Mrs. Parlavecchio filed a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). The motion became ripe for disposition on February 28, 2001, when Mrs. Parlavecchio elected not to file a reply brief.

The presentence report and briefs filed in this case reveal that the following facts are undisputed. In furtherance of the conspiracy alleged in the superseding indictment Mrs. Parlavecchio provided toiletries, foodstuffs and cryogenic sperm preservation kits to her husband through Troy Kemmerer who was employed as a correctional officer at the prison. It was part of the conspiracy that in exchange for receiving $5000 Mr. Kemmerer would obtain the sperm kits from Mrs. Parlavecchio and deliver the kits to Mr. Parlavecchio. Mr. Parlavecchio would then fill the sperm preservation kits with his seminal fluids and the kits would be returned to Mr. Kemmerer who would transport the kits from the prison to Mrs. Parlavecchio. Mrs. Parlavecchio would thereafter transport the kits or cause them to be transported to the Park Avenue Fertility Clinic in New York City. The seminal fluids were removed from the cryogenic sperm preservation kits and preserved at the fertility clinic. On or about October 2, 2000, Mrs. Parlavecchio directed that the seminal fluids be forwarded to her Obstetrician and Gynecologist, Cecilia Schmidt–Sarosi,

M.D., whose office is also located in New York City. One of the purposes of the conspiracy was to enable Mrs. Parlavecchio to conceive a child by her husband through artificial insemination.

A separate indictment was returned against Mr. Kemmerer. After Mr. Kemmerer was arrested, the investigators learned of the existence of the stored seminal fluids. When the investigators learned of the stored seminal fluids a request was made of Dr. Schmidt–Sarosi to retain the seminal fluids and not release or permit them to be used until further notice. Dr. Schmidt–Sarosi honored that request. Mrs. Parlavecchio in the motion for return of property requests that the government return and relinquish control of the seminal fluids to her.

Federal Rule of Criminal Procedure 41(e) provides in relevant part as follows:

(e) Motion for Return of Property. A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. . . . .

In the last ten years motions for return of property have been frequently litigated in district courts and Courts of Appeals.

The first issue that we must consider is whether we have jurisdiction to entertain Mrs. Parlavecchio's motion. In its brief in opposition to Mrs. Parlavecchio's motion the government questioned whether we have jurisdiction to entertain the motion because the seminal fluids were "seized" in New York City. Rule 41(e) appears to state that a motion for return of property should be filed "in the district court for the district in which the property was seized[.]" The Court of Appeals for this

circuit has not addressed the issue. The Courts of Appeals that have addressed this issue have arrived at different conclusions.

In *Thompson v. Covington,* 47 F.3d 974 (8th Cir.1995) the motion for return of property was filed in the district where the property was seized and not where the case was tried. The district court dismissed the action with prejudice. The Court of Appeals held that "post-conviction filings for return of property seized in connection with a criminal case are treated as civil equitable actions, and the district court where the claimant was tried has subject-matter jurisdiction ancillary to its criminal jurisdiction to hear the equitable action." *Id.* at 975. The Court of Appeals vacated the district court order and directed the "district court to dismiss the case without prejudice so that Thompson may refile, if he wishes, in the proper district court." *Id.*

The Court of Appeals for the Second Circuit has held that the district court in which a defendant was tried had ancillary jurisdiction to hear defendant's post-trial motion for return of seized property despite the fact that the motion was brought after the conclusion of criminal proceedings in a different district than that in which the property was seized. *United States v. Giovanelli,* 998 F.2d 116, 118–19 (2d Cir.1993). The Court emphasized that such a motion for return of property where the criminal action has been terminated " 'is treated as a civil *equitable proceeding* even if styled as being pursuant to Fed. R.Crim.P. 41(e).' " *Id.* at 118 (emphasis added) (quoting *Soviero v. United States,* 967 F.2d 791, 792–93 (2d Cir.1992)).

■ Contrary to the above cases, the Court of Appeals for the Fourth Circuit has held that after a criminal proceeding has terminated a Rule 41(e) motion must be filed in the district where the property was seized. *United States v. Garcia,* 65 F.3d 17, 20 (4th Cir.1995). In *Garcia* the Court of Appeals further held that because the property at issue was seized in Florida only the district court in Florida had jurisdiction. However, there was a very succinct and thoughtful dissent in that case in which Circuit Judge Murnaghan pointed out that

[c]ontrary to the majority's assertion, I do not find that the language of Rule 41(e) is dispositive of the issue of jurisdiction. Rule 41(e) asserts merely the positive rule that a person aggrieved by an (sic) deprivation of property *"may* move the district court for the district in which the property was seized for the return of the property." Fed.R.Crim.P. 41(e) (emphasis added). It in no way therefore mandates the negative rule that such a person "may not sue elsewhere." Thus, at the very least, the language of the rule does not preclude the application of general principles of ancillary jurisdiction to the case at bar.

Ancillary jurisdiction is afforded in special cases to courts, which would otherwise lack jurisdiction, in order to ensure that a particular case is handled in its entirety by one court and to further the principles of judicial economy. *Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C.Cir.1969). In particular, ancillary jurisdiction is appropriate where: (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main proceeding, or is an integral part of main proceeding; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) the determination of the ancillary matter would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter can be settled to protect the integrity of the main proceeding or to ensure

that the disposition in the main proceeding will not be frustrated. The application of those principles to the instant case suggests that ancillary jurisdiction would be appropriate here in light of the fact that all of the other aspects of the government's case against Garcia were handled by the district court for the Eastern District of North Carolina.

Additionally, the majority's interpretation of Rule 41(e) would be most unfortunate in any of the numerous cases in which the ... seizure of property occurs in several districts rather than in one district.... Indeed, under the majority's interpretation of the rule, persons whose property has been seized in several districts would be forced to file separate post-trial motions for return of property .... The basic principles of judicial economy suggest that such an outcome would be regrettable and unduly burdensome.

*Id.* at 21. We conclude based on *Thompson, Giovanelli* and the dissent of Circuit Judge Murnaghan in *Garcia* that we have ancillary jurisdiction to entertain Mrs. Parlavecchio motion for return of property and that the motion will be treated as a civil equitable proceeding. See also *United States v. Chambers,* 192 F.3d 374, 376 (3d Cir.1999) ("[S]uch an action is treated as a civil proceeding for equitable relief.").

■ A basic principle applicable to this case is that one requesting the court to exercise its equitable powers must come into court with "clean hands." *Gaudiosi v. Mellon,* 269 F.2d 873, 881–82 (3d Cir.1959); see also *Root Refining Co. v. Universal Oil Products Co.,* 169 F.2d 514, 534 (3d Cir.1948) ("No principle is better settled than the maxim that he who comes into equity must come with clean hands and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever

may have been the merits of his claim."). The Court of Appeals in *Gaudiosi* further stated that "[p]ublic policy not only makes it obligatory for courts to deny a plaintiff relief once his 'unclean hands' are established but to refuse to even hear a case under such circumstances." 269 F.2d at 882.

■ In this case Mrs. Parlavecchio is not entitled to equitable relief. The ultimate crime in this case was bribery, i.e., the illegal payment of money in exchange for receiving seminal fluids from Mrs. Parlavecchio's husband. The fruits of the crime for Kemmerer was the cash he received. From the other perspective, the fruits of the crime for Mrs. Parlavecchio were the seminal fluids she obtained in exchange for the cash she paid. Each of the parties to the illegal transaction gained something to which they were not legally entitled and which was the result of the criminal activity: Kemmerer received the cash and Mrs. Parlavecchio received the seminal fluids.

To permit Mrs. Parlavecchio to recover the illegally obtained seminal fluids would constitute judicial approval of her criminal activities and reward her for her crime. We will not use our equitable powers to aid a wrongdoer. Cf. *United States v. Farrell,* 606 F.2d 1341, 1348–49 (D.C.Cir. 1979) (property delivered under an illegal contract cannot be recovered by any party in pari delicto). Mrs. Parlavecchio's motion for return of property will be denied.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The motion entitled "Motion for Return of Property Pursuant to Fed. R.Crime. 41(e)" (Doc. 83) filed by Maria Parlavecchio is denied.

2. Unless Mrs. Parlavecchio files a notice of appeal the government may after 30 days from the date of this order destroy

the seminal fluids of Antonino Parlavecchio stored at the office of Dr. Schmitdt–Sarosi.